SHERMAN, DECEASED, ET, PETITIONERS, *v.* SHERMAN ET, DEFENDANTS.

Probate Court, Montgomery County.

No. 150402. Decided January 15, 1962.

*Messrs. Turner, Wells, Granzow & Spayd*, for petitioners.

*Messrs. Lair, Herkins, Lair & Wiseman* for the Children of John Q. Sherman, Deceased.

*Messrs. Beigel & Mahrt*, for Guardian Ad Litem.

ZIMMERS, J. This cause is before the Court upon the petition of the plaintiffs, trustees, some of whom were also the executors of the estate of John Q. Sherman, deceased, requesting this Court to construe certain provisions of the will of the testator; for a declaration of certain rights of the parties hereto; and for the direction and instruction of the trustees in certain respects. An answer has been filed by the eight children of the testator who are immediate income beneficiaries of trusts established by the testator's will. The Guardian ad Litem, who was appointed for all minor defendants and Trustee for unborn remaindermen, has filed answers on behalf of the various defendants represented by him. The action is brought pursuant to Section 2107.46, Revised Code, and Section 2721.01, Revised Code, et seq.

John Q. Sherman died testate on July 27, 1939, leaving his widow, Katherine M. Sherman, and eight living children, the oldest of whom was approximately twenty years of age. A copy of decedent's last Will and Testament was introduced into evidence at the hearing on this matter and marked Exhibit "A." Under ITEM III (a) of said Will, all the rest, residue and remainder of the estate is divided into eight equal, separate trust funds, known as Trusts "A" through "H" inclusive. Out of the net income derived from all trust funds, the widow, Katherine M. Sherman, is to be paid the sum of $25,000.00 annually. ITEM III (c) provides that after payment of said $25,000.00 per annum to said widow, 80% of the remaining net income from each trust fund shall be referred to as surplus income and under ITEM III (d) to (k), said 80% is to be respectively distributed to a specified child or his lineal descendants. The effect of this provision was that the remaining 20% of said net income was to be held in each of the trusts for the benefit of the remaindermen. The Will establishes as remaindermen the lineal descendants of each child of the decedent alive at the termination of the respective trusts. If there be none, that child's trust or children's trusts are to pass to the remaining trusts and if none to the heirs of the testator determined by the statute of descent and distribution in effect on the date of the

testator's death. ITEM III (m) provides that each of the trusts shall terminate upon the death of a child without descendants, or as a group they shall terminate on the day preceding the twenty-first anniversary of the death of the final survivor of the testator's wife and children and the corpus of each trust is to then pass to the income beneficiaries on that date in the same proportion as income is being distributed.

ITEM III of said Last Will and Testament provided in part.

(o) The income payments from every trust created by this Will shall commence from the date of my death but only be made when and as such income, after it shall have accrued, shall be in the possession of my Trustees for payment;

and (q) Income payments provided for herein shall be made in quarterly installments as nearly as possible.

Under ITEM IV of said Last Will and Testament, the testator grants inter alia to his executors and trustees the following powers:

(a) In their discretion, to retain and continue to hold as a part of the Trust Estate any property or investment owned by me at the date of my death without liability for depreciation or loss occasioned by doing so;

(e) To invest any money in the Trust Estate in stocks, bonds and other securities or property, real or personal, secured or unsecured, whether the obligations of individuals, corporations, trusts, associations, governments, or otherwise, either within or outside of the State of Ohio, as they shall deem advisable, without any limitation whatsoever as to the character of investment under any statute or rule of law regarding trust funds or investments by fiduciaries or otherwise;

(m) To determine in their discretion how all receipts and disbursements shall be credited, charged or apportioned between income and principal except that premiums on investments shall be charged against principal and shall not be amortized against income;

(n) To do all other acts in their judgment necessary or desirable for the proper and advantageous management, investment and distribution of the Trust Estate;

(p) To pay to any beneficiary of any Trust hereunder or

expend for his or her benefit such portions of the principal of the Trust Estate from which he or she is deriving income, as the Trustees in their uncontrolled discretions shall deem necessary or advisable to meet the expenses of education, illness, marriage, death or other emergency;

Upon the death of any beneficiary, all unpaid accrued net income which would have been paid to such beneficiary if he or she had continued to live, shall be paid to the succeeding beneficiary;

(q) To determine in their discretion how the annual payment of Twenty Five Thousand ($25,000.00) Dollars to KATHERINE M. SHERMAN, shall be charged or apportioned among the Trust Funds created by ITEM III hereof. It is my desire that said annual charge be equally apportioned among said Trust Funds if possible.

At the time John Q. Sherman executed his Last Will and Testament, which was in May of 1937, his oldest child was approximately eighteen years of age, and all were unmarried, and, therefore, he had no grandchildren living at that time, nor were any children born thereafter. The oldest of the eight children is now forty-one years of age and the youngest thirty years of age. Since the life expectancy of the children range from 28.5 to 42 years, the likely duration of the trusts is approximately 63 years. There are presently in existence sixteen grandchildren of the decedent.

The "cost" value of the assets of *each* of the eight trusts, as carried on the books of each trust, is approximately $375,-000.00; and the market value of *each* of said eight trusts, as of November 30, 1960, is in excess of $2,397,000.00, representing an unrealized gain in excess of $2,000,000.00, as is more specifically set forth in Exhibit "C," admitted into evidence. A substantial portion of the assets of each trust consists of stock in the Standard Register Company. Exhibit "D" shows that each present income beneficiary is receiving approximately $50,000.00 per year from their respective trusts.

The retained income alone up to November 30, 1960, representing the 20% added to the corpus of each of the eight trusts, amounts to $103,357.81, as more specifically set forth in Exhibit "G," introduced into evidence, or a total of $826,862.48 for

all eight trust funds, which figure almost equals the original value of the testator's entire estate at the time of his death.

As explained in Exhibit "H," using one trust as an example, in this instance, the trust of William P. Sherman, if all of the *Standard Register* stock were sold at the market value as of November 30, 1960, the net proceeds, after deducting capital gains taxes and expense of sale, would be $1,548,000.00. If 80% of this capital gain or profit were distributed to the life tenants, less other expenses, the 20%, equalling $422,400.00, would remain in the corpus of *each* trust, which amount would *again* more than equal the total value of *each* trust in 1939, the year of testator's death.

The estate administration existed approximately 19 years after the testator died. The Trustees of the eight trusts were appointed on June 29, 1940. Since the appointment of the Executors, the net capital gain on sales in the estate amounted to $1,329,191.86, as set forth in Exhibit "E." Subsequent to the appointment of the Trustees, the net capital gain on sales in *each* trust amounts to $22,111.46. In October of 1956 a stock reclassification or stock split of Standard Register stock resulted in the issuance of forty-eight (48) shares of Common stock and fifteen (15) shares of Class A stock for each outstanding share of capital stock. In November 1956 as part of a public offering of Standard Register stock, the estate and each of the eight trusts sold 25% or an aggregate of 79,900 shares of their holdings of Standard Register Common stock. The selling price per share was $22.45. After deducting for selling expenses and costs basis, each of the eight trusts realized a capital gain of $22,110.96 and the estate realized a capital gain of $1,329,191.86. The resulting cash was invested in government and municipal bonds and corporate stocks. Since that time the estate of John Q. Sherman has been closed and the assets of the estate distributed equally to each of the eight trusts. On February 15th, 1960, and shortly before the commencement of this action, a 5% stock dividend was declared by the Standard Register Company. As a result *each* trust received 624 shares of Class A stock and 1,498 shares of Common stock, having the total market value of $127,320.00 of which is set forth in said Exhibit "E."

All of the capital gains realized and newly issued shares of stock in the estate or in the trust have been allocated to corpus except the 5% stock dividend of 1960 which remains unallocated.

Wellmore B. Turner, one of the trustees herein, testified that the reason the executors and trustees reinvested the realized capital gains from the sale of Standard Register stock in 1956 was that they felt that it was in accordance with the established law of Ohio, the majority of the states of the United States, and good accounting principles.

The questions set forth in the petition, in the order in which the Court will treat them are as follows:

3. If the answer to 2 is affirmative, are capital gains, under the terms of the Last Will and Testament of John Q. Sherman, "receipts" which the Petitioners have discretion to allocate, all or in part, to income pursuant to Item IV (m)?

14. If the answer to 13 is affirmative, are either stock dividends or stock splits under the terms of the Last Will and Testament of John Q. Sherman, "receipts" which the Petitioners have discretion to allocate, all or in part, to income pursuant to Item IV (m)?

2. If the answer to 1 is negative, is it the settled general principle of law in Ohio that, in the absence of a discretionary power, capital gains received upon the sale or exchange of assets of a trust are to be allocated to principal?

13. If the answer to 12 is negative, is it the settled general principle of law in Ohio that, in the absence of a discretionary power, stock dividends or stock splits received by a trust estate are to be allocated to principal?

1. Are capital gains received upon the sale or exchange of assets of said Trust Estate, income, under the terms of the Last Will and Testament of John Q. Sherman, to be included within Net Income described in Item III (b) and to be distributed currently pursuant to Item III (c) through (k), inclusive?

12. Are either stock dividends or stock splits received by said Trust Estates, income, under the terms of the Last Will and Testament of John Q. Sherman, to be included within Net

Income described in Item III (b) and to be distributed currently pursuant to Item III (c) through (k), inclusive?

7. If the answer to 5 is affirmative, may your Petitioners, in exercising their discretion, consider such factors as they, in good faith, deem pertinent together with such factors as the Court may direct them to consider in answering No. 6; and in coming to a determination based, in good faith, upon such factors, may your Petitioners have such determination binding upon all parties in interest?

18. If the answer to 16 is affirmative, may your Petitioners, in exercising their discretion, consider such factors as they, in good faith, deem pertinent together with such factors as the Court may direct them to consider in answering No. 17; and in coming to a determination based, in good faith, upon such factors, may your Petitioners have such determination binding upon all parties in interest?

9. If the answer to 3 or 4 is affirmative, may your Petitioners exercise such discretion with respect to capital gains realized prior to the current fiscal year

(a) by the Trust Estates?

(b) by the decedent's Estate, the invested proceeds from which were later distributed to the Trust Estates?

5. If the answer to 3 or 4 is affirmative, do your Petitioners have the discretion to allocate part or all of such capital gains to income for any reason or reasons other than when necessary or advisable to meet the expenses of education, illness, marriage, death or other emergency involving the income beneficiary?

20. If the answer to 14 or 15 is affirmative, may your Petitioners exercise such discretion with respect to such stock dividends or such stock splits received prior to the current fiscal year by the Trust Estates?

16. If the answer to 14 or 15 is affirmative, do your Petitioners have the discretion to allocate part or all of such stock dividends or such stock splits to income for any reason or reasons other than when necessary or advisable to meet the expenses of education, illness, marriage, death or other emergency involving the income beneficiary?

8. If the answer to 3 or 4 is affirmative, and your Peti-

tioners exercise their discretion to allocate a part or all of such capital gains to income, is the capital gain allocated to income to be treated as Net Income so that 80% of the same is to be considered "Surplus Income," pursuant to Item III (c)?

19. If the answer to 14 or 15 is affirmative, and your Petitioners exercise their discretion to allocate a part or all of such stock dividends or such stock splits to income, is the stock dividend or stock split allocated to income to be treated as Net Income so that 80% of the same is to be considered "Surplus Income," pursuant to Item III (c)?

10. If the answer to 3 or 4 is affirmative, may your Petitioners determine to sell or exchange an asset for the sole purpose of realizing a capital gain upon which they would exercise their discretion to allocate a portion thereof to income?

21. Are the determinations made herein applicable to the successors of your Petitioners?

Questions numbered—

4. If the answer to 2 is affirmative, are capital gains, under the terms of the Last Will and Testament of John Q. Sherman, "receipts" which the Petitioners have discretion to allocate, all or in part, to income pursuant to Item IV (m)?

11. If the answer to 10 is negative, may your Petitioners, in determining whether to sell or exchange an asset, take into consideration, as a factor in that determination, a purpose to realize a capital gain upon which they would exercise their discretion to allocate a portion thereof to income?

13. If the answer to 12 is negative, is it the settled general principle of law in Ohio that, in the absence of a discretionary power, stock dividends or stock splits received by a trust estate are to be allocated to principal?

in the petition need not be answered because of the Court's answers to the foregoing question. Questions—

6. If the answer to 5 is affirmative, what other factors, if any, should your Petitioners consider in exercising their discretion?

17. If the answer to 16 is affirmative, what other factors, if any, should your Petitioners consider in exercising their discretion?

in the petition cannot be answered by this Court for the reasons set forth in the opinion.

Questions A, in the Answer filed by the testator's children, will not be answered because this testator's will contains a discretionary allocation clause and it is, therefore, unnecessary to answer the same. Questions B thru D should be answered in the affirmative by virtue of this Court's opinion herein.

In the brief of counsel for the remaindermen an issue not raised before the hearing in this cause was propounded, which issue should be treated before the Court proceeds to instruct the trustees and to declare the rights of the parties herein. He contends that the Court has no jurisdiction to proceed with a construction of the will because the necessity for construction has not yet arisen. He further contends that a declaration of rights is not permissible because no present controversy exists.

It must be noted that this action has been commenced pursuant to Sections 2101.24 (1), 2107.46, Revised Code, and Section 2721.01, Revised Code, et seq. The former section has been considered to include a codification of the long established rule that, when in doubt as to his powers and duties or the wisdom of any action, a trustee may seek the guidance of a Court of Equity before the action is taken rather than suffer the unfortunate consequences thereof. See 54 Ohio Jurisprudence (2d), Trusts, Sec. 173, and the cases cited therein.

A justiciable controversy is usually required for a proceedings under Section 2721.01, Revised Code, et seq. The Court finds that the position taken by counsel for the remaindermen is not well taken when he contends that none exists in the case at bar. Item IV (m) of the testator's will gives discretion to the trustees to allocate receipts to principal or income. According to the testimony of Mr. Turner, one of the trustees, the capital gains realized from the sale of Standard Register stock in 1956 were reinvested in additional securities which action, in this Court's opinion, constituted an exercise of their discretion to allocate to principal the excess proceeds over the cost of the stock. The reason for this action, according to Mr. Turner's testimony, was that the trustees felt that this was according to the law of Ohio, the majority of the states of the United States, and established accounting principles. One of

the immediate income beneficiaries questioned this exercise of discretion by the trustees on the basis that ITEM IV (m) did not require the trustees to follow established rules of trust law applicable if no powers or discretion were granted by the instrument. The trustees in their petition indicate that they are now in doubt as to the effect of ITEM IV (m) upon their actions in administering this trust. They have stated that they feel that their allocative discretion may exist only when there is legal doubt as to whether receipts constitute principal or income. While the life tenants have not contended that the trustees' action in 1956 was an abuse of discretion, their interpretation of said discretionary clause is broader than the one professed by the trustees. Therein lies one of the principal controversies in the case at bar.

The scholarly briefs of counsel in the case at bar have been extremely beneficial to the Court in its research of the law applicable to the issues involved. One important point agreed upon by all counsel herein is that the discretionary powers must be construed and applied after a consideration of the design and plan of the testator as set forth in the four corners of his will.

Answers: Q. 3 and 14

In view of the extremely liberal grant of powers in ITEM IV of the testator's will this Court is of the opinion that the word "receipts" as used in IV (m) of the testator's will was intended to include realized capital gains and newly issued shares as a result of stock dividends or stock splits. But, even though this Court may find that the discretion granted in IV (m) permits the trustees to allocate such receipts contrary to rules applicable when no such power is given, obviously the trustees would not be permitted to ignore the testator's overall plan which is to adequately provide for his wife and his lineal descendants as long as the rule against perpetuities and his trust estate will permit. Barring a catastrophe this class will obviously become large and the trustees have the duty to preserve the corpus of the trusts to the extent necessary to accomplish this purpose.

Answers: Q. 2 and 13

In Ohio there are very few reported cases in which clauses

granting discretion in the allocation of trust receipts to principal or income are treated. In *Hopkins, Co-Trustees* v. *The Cleveland Trust Company, Trustee, et al*, 163 Ohio St., 539 (1955), the will created discretionary power to allocate, but required the co-trustees to agree upon the allocation. Since the facts of that case reflected a disagreement the Court followed *Lamb* v. *Lehmann*, 110 Ohio St., 59 (1924), wherein there was no discretionary allocation clause and it was decided that stock dividends are principal. In both of these cases the Ohio Supreme Court expressly followed the Massachusetts rule established in *Dumaine* v. *Dumaine*, 16 N. E. (2d), 625 (1938), 301 Mass., 214, which treats capital gains and stock dividends as principal in the absence of a discretionary allocation clause. The Court concludes, therefore, that the established law of Ohio is that in the absence of a discretionary allocation clause capital gains, stock dividends and stock splits, which are analogous to stock dividends, are to be treated as principal.

Answers: Q. 1 and 12

Some Courts have construed discretionary allocation clauses to only vest in the trustee the power to allocate in the event there is some doubt whether the trust receipt is capital or income. See 27 A. L. R. (2d), 1323 at pages 1328-1330. In several of the cases cited in the above article the testator gave the discretion when a ''question'' arose as to the allocation of trust receipts thus expressly manifesting an intent that the power or discretion was to be used only in areas of doubt. *In re Talbot's will*, 9 N. Y. S. (2d), 806 (1939), and *American Securities and Trust Company* v. *Frost*, 17 App. D. C., 75, 117 F. (2d), 283 (1940).

But, in 27 A. L. R. (2d), 1323, at page 1330, it is stated that many provisions wherein a trustee is given a power to allocate trust receipts have been construed to give the trustee some discretion (citing cases) and, at page 1331, it is further stated that when such powers are given, the Courts usually uphold the allocation made by the trustees in the exercise of the power if made ''honestly, reasonably and in good faith'' (citing cases). In some of the cases under the latter citation the will contained words to the effect that the power or discretion to allocate was to be ''full'' (see *Dumaine* v. *Dumaine, supra*), or ''absolute''

*Wallace* v. *Julier*, 147 F. L. A., 420, 3 S. O. (2d), 711 (1941), and *Sears* v. *Childs*, 309 Mass., 337, 35 N. E. (2d) 663 (1941).

It appears that it might be well to quote and to consider the American Law Institute Restatement of the Law of Trusts (2d), Section 187:

"*Control of Discretionary Powers.* Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the Court, except to prevent an abuse by the trustee of his discretion.

a. *When powers are discretionary.* The exercise of a power is discretionary except to the extent to which its exercise is required by the terms of the trust or by the principles of law applicable to the duties of trustees. As to the principles of law applicable to the duties of trustees, see Sections 169-185.

By the terms of the trust or by the principles of law applicable to the duties of trustees, it may be the duty of the trustee to exercise a power conferred upon him, or, on the other hand, he may have discretion whether to exercise the power or not. Even though it is the duty of the trustee to exercise a power, he may have discretion as to the time, manner and extent of its exercise.

b. *Methods of control.* When the court controls the exercise of a power by the trustee, it may do so by directing him to act or refrain from acting; by setting aside the transaction where he has already acted; or by holding him liable for the results of his action or non-action. The court will sometimes remove a trustee or deny or diminish his compensation where he has abused discretion conferred upon him.

c. *Kinds of discretionary powers.* The rule stated in this Section is applicable both to the powers of managing the trust estate conferred upon the trustee either in specific words or otherwise, and also to such powers as may be conferred upon him to determine the disposition of the beneficial interest. Thus, it is applicable not only to powers to lease, sell or mortgage the trust property or to invest trust funds, but also to powers to allocate the beneficial interest among various beneficiaries, to determine the amount necessary for a beneficiary's support, or to terminate the trust.

As to a discretionary power to apply principal for the benefit of the income beneficiary, see Sec. 128, Comment i.

As to a discretionary power to allocate receipts or expenses to income or principal, see Sec. 233, Comment p.

d. *Factors in determining whether there is an abuse of discretion.* In determining the question whether the trustee is guilty of an abuse of discretion in exercising or failing to exercise a power, the following circumstances may be relevant: (1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or nonexistence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; (6) the existence or non-existence of an interest in the trustee conflicting with that of the beneficiaries.

e. *No abuse of discretion.* If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment. The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee. Thus, if the trustee is empowered to apply so much of the trust property as he may deem necessary for the support of the beneficiary, the court will not interfere with the discretion of the trustee on the ground that he has applied too small an amount, if in the exercise of his judgment honestly and with proper motives he applies at least the minimum amount which could reasonably be considered necessary, even though if the matter were left to the court to determine in its discretion it might have applied a larger amount. So also, the court will not interfere on the ground that the trustee has applied too large an amount, if in the exercise of his judgment honestly and with proper motives he applies an amount not greater than a reasonable person might deem necessary for the beneficiary's

support, although the amount is greater than the court would itself have awarded.

f. *Dishonesty.* The court will control the trustee in the exercise of a power where he acts dishonestly. Thus, if the trustee receives a bribe for exercising or failing to exercise a power, the court will interpose.

In 50 Yale L. J. 1467 appears an excellent article concerning the origin and utilization of powers in trust instruments which permit a trustee to determine whether trust receipts are income or principal. As stated therein, settlors insert these discretionary powers to eliminate litigation in case the law is unsettled; to preclude complexity and injustice where the law is settled; and to permit the favoring of the life tenant or remaindermen.

This Court believes that a fourth purpose could be added to the above list. When a settlor has granted the trustee broad powers which in effect permit the trustee to depart from many established trust duties, he may insert such a discretionary allocation clause to permit the trustees to cause ordinary trust results when the use of their broad powers has created results inconsistent with ordinary trust results. For example, in a trust where no preference is *required* between life tenants and remaindermen, if pursuant to broad trust powers the trustees' administration results in an obvious advantage to the remaindermen, the discretionary allocation clause can be used to equalize the effect of that administration rather than to permit the preferential results to remain.

In view of the foregoing authorities this Court must now examine the will at bar and insofar as possible apply the rules set forth therein.

The trustees' power provision in ITEM IV (m) of the testator's will can be at least described as a liberal one. There is no indication therein that the trustees are in any manner to be governed by rules applicable in cases where discretionary powers, investment powers, etc. are not granted. From the language used by the testator this Court can find no reason to limit the trustees' exercise of discretion under ITEM IV (m) to trust rules applicable in the absence of a grant of discretionary power in the instrument.

It is the opinion of this Court that by his liberal powers

grant in ITEM IV the testator has removed his trustees from the operation of many statutory and case law rulings with respect to the administration of the trust. In other words the testator had decided to rely upon the judgment of his trustees insofar as the law would permit.

The instrument shows that the testator had implicit faith in the judgment and wisdom of the original trustees. The evidence shows that the settlor had received legal and business advice and counsel from the trustees for many years prior to the creation of the trust. And the evidence further shows that notwithstanding the normal course of inflationary trends that from the time the trust was created through the continued advice and counsel of the trustees to the said corporation the value of the stock in the trust of said corporation has increased nineteen times from the time the instrument was made to the present time. Thus it is readily seen at this vantage point why the settlor had implicit faith in his original appointed trustees and why the language of said instrument endowed the trustees with broad discretionary powers. Thus the settlor had the power and right and purpose in giving the appointed trustees the power to determine whether "receipts" should be apportioned to income or corpus.

The Court is of the opinion that it would be unreasonable to construe the allocative discretion granted in ITEM IV (m) in a restricted sense when said provision is found surrounded by extremely liberal grants of power wherein the testator has manifested extreme confidence in the judgment of his trustees and, therefore, the Court concludes that the trustees do not have to follow established trust law as applicable in the absence of a grant of discretionary power in the instrument or do they need to have the existence of legal doubt before the execution of this discretionary allocative power.

Answers: Q. 7 and 18

Having so construed the allocative powers as discretionary even though no legal doubt exists, it now becomes necessary to decide the degree of the discretion granted in IV (m). Since this particular grant is not preceded by language to the effect that the discretion is "full," "absolute," or "sole," this Court concludes that the testator intended such discretion to be used

with reason and in good faith, not arbitrarily. See Restatement of the Law of Trusts (2d), Section 187, supra.

Applying the foregoing construction to the question of allocation of realized capital gains from the sales of Standard Register stock, this Court concludes that the executors-trustees have properly exercised their discretion. If they desired to follow the rule in Ohio applicable in the absence of a discretionary power they have acted with reason and in good faith, and as long as the trustees act with reason and good faith they may exercise this discretionary allocative power as to capital gains, stock dividends and stock splits that may occur in the future.

In the event that this Court finds that the trustees have discretion to allocate in a manner contrary to the rules applicable when no discretion to allocate is given, which the Court has found, the trustees have requested the Court to advise them as to what ''factors'' they should consider in exercising their discretion. In effect they are asking the Court to exercise their discretion which under the will at bar this Court cannot do. See *Hopkins* v. *Bank, supra*, syllabus 1, and the opinion of the Court at pages 548 and 549. This Court is of the opinion, however, that the aforesaid ruling does not preclude the trustees from seeking the direction of the Court as to whether a contemplated future transaction would be *an abuse of discretion*. No such request has been made in the case at bar, because no definite plan of liquidation, allocation and reinvestment with supporting reasons has been submitted.

Answers: Q. 9, 5, 20 and 16.

ITEM III (o) and (q) require income payments to be made when they come into the possession of the trustees and as nearly as possible in quarterly installments. From the accounts filed by the executors-trustees it can be ascertained that they have reinvested rather than distributed the gains realized in the 1956 sale of Standard Register stock and the Court is of the opinion that such action constitutes an exercise of their discretion to allocate the same to principal. The Court is further of the opinion that to now distribute any part of said gains to the life tenants the trustees would now have to resort to its power to invade corpus which is limited by the express

language in ITEM IV (p). In other words any such invasion must be made only after the trustees have determined that the beneficiary is engaged or about to engage in one of the mentioned situations and that it is either necessary or advisable to provide funds in case of such need in addition to the income from the trusts which is directed to be distributed to that beneficiary. It should be noted that the invasion provision applies to all beneficiaries. Considering the amount of income currently produced by each trust and the fact that each trust has only one income beneficiary, it seems unlikely that the trustees would find reason to invade currently. When the per stirpes division of income results in smaller distributive shares in later years this invasion power will undoubtedly be useful.

The Court is of the opinion that the 1956 stock split also must be considered to have been allocated to principal because of express provisions of ITEM III (o) and (q). Since the executors-trustees have not distributed as income the additional shares of Standard Register stock resulting from said stock split, they must be held to have exercised their discretion to allocate the same to principal. And they are also limited by ITEM IV (p) as to said stock split.

The stock dividend occurring in 1960, however, came into existence shortly before the commencement of these proceedings. Since the trustees have asked the Court's direction in this matter shortly thereafter, this Court concludes that they have not yet exercised their discretion with respect to these dividends and that they are free to exercise their discretion in accordance with the opinion of the Court herein within a reasonable time hereafter.

Answers: Q. 8 and 19

Notwithstanding this Court's construction of ITEM IV (m) of the testator's will, the testator has clearly indicated that the 80%-20% formula applies to all net income derived from the trusts. Once the trustees have allocated a receipt to income the Court is of the opinion that the above formula must be applied to the actual distribution of the same.

Answers: Q. 10

The trustees have further questioned whether they may convert a principal asset for the sole purpose of realizing capital

gains upon which they would exercise their discretion to allocate a portion thereof to income. In ITEM IV (b) and (e) the testator has given the trustees full powers of sale and reinvestment, thereby permitting freedom to reinvest at will. In ITEM IV (m) he has given the trustees the discretion to allocate receipts to principal or income. As has already been decided, this discretion is not absolute and may not, therefore, be exercised arbitrarily. See Restatement of the Laws of Trusts (2d), Section 187, supra. Reading these provisions together the Court is of the opinion that if the trustees have a *reasonable basis* to allocate a portion of unrealized capital gain to income they may liquqidate the asset to do so under their powers to sell and reinvest at will.

Ordinarily a trustee has many duties which are defined by statute or pronounced by the Courts of Equity in the jurisdiction wherein the trust is operated. Often a situation arises during the administration of a trust in which the action of the trustee might be found to prefer the principal beneficiary over the income beneficiary or vice versa. In many of these situations the trustees have the underlying duty to treat all beneficiaries impartially, unless the trust instrument establishes a preference. See 54 Ohio Jurisprudence (2d), Trusts, Sec. 186.

Contrary to the contentions of counsel for the life tenants, merely because this testator has provided (1) for his wife and children, (2) for his grandchildren, (3) his lineal descendants, and (4) his heirs at law determined on a future date in the order listed, there is no indication that the powers inserted in the will at bar were *required* to be used to prefer either class over the other. The only expressed preference therein is the guaranteed income to the testator's wife. The Court is of the opinion, therefore, that the testator has not given these powers to accomplish any particular preference among beneficiaries. The Court is of the further opinion that because of the broad powers granted in this will, the testator has dispensed with the requirement of equal treatment of the beneficiaries, at least to the extent that any unequal treatment does not frustrate the underlying testamentary plan. For example, the trustees could not retain these substantial investments in Standard Register stock if the distributable income

therefrom was insufficient to provide for his children, the immediate income beneficiaries. By the same token they cannot close their eyes to the ever expanding class of future income beneficiaries and remaindermen.

As to future realized capital gains, stock dividends and stock splits this Court feels compelled to point out that the life tenants' position should not necessarily be ignored by the trustees. A reasonable basis for allocating to income some of the stock dividends and shares resulting from a stock split and future realized capital gains may exist.

What has prompted the objection of the life tenants to the manner in which the capital gains realized in 1956 have been treated? By virtue of the absolution of the trustees from the rule requiring investments to be reasonably diversified (see ITEM IV (a) and (e) of the Will, Sections 2109.37, Revised Code, and Section 2109.371, Revised Code; 54 American Jurisprudence on Trusts, Sec. 417 at page 331; and 131 A. L. R., 1156, particularly Section III at 1168) a substantial portion of these trust funds were permitted to remain invested in one corporation which during the period of the estate and trust administration has grown tremendously. While there is no specific evidence on this point, this growth was undoubtedly accomplished by a substantial retention of earnings by the corporation and a reinvestment of the same in the business. Inflation, of course, has also contributed to the growth in value of the trust assets. Such is the history of most successful business corporations in this time of economic growth in the United States. When a substantial portion of the assets of a trust have been invested in such a business it must be concluded that the corpus beneficiaries have gained and it may be concluded that the income beneficiaries have lost to some extent because a substantial portion of earnings or business income has not been distributed but has become part of capital in favor of the corpus beneficiaries. It must be pointed out, however, that if some of the original trust funds would have been invested in securities known to produce a higher rate of income, but also known to have limited growth potential, the income beneficiaries may have received a "larger piece of a smaller pie."

190

Even though the testator has permitted it in the will at bar, management of a business is ordinarily governed by different criteria than the management of trust funds. Indeed, since the trustees have admitted that one of the reasons for seeking this Court's advice is their desire to possibly diversify trust investments in the future, it is indicated that in the future they may be planning to administer the trust in a manner more consistent with trust principles than with business principles. It would, therefore, be very reasonable for the trustees in the case at bar to make a thorough study of the growth of the Standard Register Company and the rates of distributable income produced during the administration of the estate and the trusts. For example, from Exhibits "C" and "D" it can be determined that Standard Register stock held by the trusts returned income of approximately 2% in 1960 when the present value of the stock is considered. When there are available today tax exempt income producing securities at a higher rate of income it seems very likely that some diversification of investments will now result in high distributable income to the present income beneficiaries. Why then, should the trustees not take this into consideration in the exercise of their allocation power upon future liquidation of these assets.

It seems that the income beneficiaries are requesting consistent management of the trust assets. In other words, if the trustees disregard usual trust investment rules because of a broad investment powers grant, it would be reasonable for them to also disregard usual trust allocation rules because of the discretionary allocation powers grant. Such consistency in trust management would certainly be reasonable, but the aforesaid statement is perhaps an over-simplification of the allocation problem confronting these trustees. Under the facts presented in the case at bar there are many possible bases upon which the trustees could predicate a reasonable exercise of their allocation powers. The Court is merely suggesting that consistency in the exercise of investment and allocation powers affords one basis for a reasonable exercise of such powers. But, as this Court has found herein, adherence to trust allocation rules applicable in the absence of an allocation powers grant is also a reasonable exercise of such allocation power.

Answers: Q. 21

The Trustees have asked whether the orders of the Court in this action will be binding upon the successors to these trustees if any are appointed. This Court is of the opinion that insofar as it has construed this testator's will, its orders will be res adjudicata upon the successor Trustees, if any. See *The Fifth-Third Union Trust Co., Trustee* v. *Rawson, et al*, 74 Ohio App., 508, 33 Ohio Opinions, 138 (1944), and 23 Ohio Jurisprudence (2d) on Fiduciaries, Section 172 and cases therein cited. However, in so far as this opinion attempts to instruct these trustees, the orders arising from this proceedings will not bar a repetitious request for instructions if the facts materially change. See *Trust Co.* v. *Rawson, supra.*

By way of summary this Court is of the opinion that there is a controversy between the trustees and the income beneficiaries as to the degree of discretion granted to the trustees in ITEM IV (m) of the decedent's will. The Court is of the further opinion that the trustees are in doubt as to the construction of certain provisions in the will and are entitled to instructions to the extent herein given.

The Court is of the opinion that the word "receipts" as used in ITEM IV (m) of said will includes realized capital gains and newly issued shares of stock resulting from stock dividends or stock splits. In the absence of a provision in the trust instrument to the contrary this Court is of the opinion that Ohio law requires such proceeds to be allocated to principal. The will at bar, however, contains a discretionary allocation clause which, because it is surrounded by other extremely broad power clauses, permits these trustees to depart from the established allocation rule. While doubt as to the allocation required by established trust law is not a prerequisite to the exercise of this discretion, any allocation pursuant thereto must be with reason and in good faith, not arbitrary. Allocation of trust receipts in accordance with the law of Ohio, applicable when no allocation clause is contained in the trust instrument is a reasonable exercise of such discretion.

The Court is of the opinion that the reinvestment of capital gains realized in 1956 constituted an exercise of the discretionary allocation power thereby making such receipts part

of corpus. To distribute any part of said gains the Trustees are now required to follow ITEM IV (p) with regard to invasion of corpus. The Court is also of the opinion that new shares resulting from the 1956 stock split or reclassification have been allocated to principal because they were not distributed to the income beneficiaries pursuant to ITEM II (o) and (q). The 1960 stock dividend, arising shortly before the commencement of this action and at a time the trustees were in present doubt as to the effect of their allocation power, has not been allocated by them and the same may be within a reasonable time after this opinion is received by them.

While this Court is of the opinion that it cannot direct and thereby exercise the discretion given to the trustees, it could upon specific request decide whether a specified action would be an abuse of discretion.

Even though the trustees allocate a trust receipt to income the 80%-20% formula established in ITEM III still applies. If the trustees have a reasonable basis to allocate capital gains to income they may liquidate an asset to accomplish the desired result because they also have the powers to sell and reinvest at will.

In so far as this Court has construed the decedent's will the decisions herein are res adjudicata upon the successor trustees, if any, and upon all of the parties hereto. A material change in facts, however, would permit a repetitious request for instructions.