425 P.2d 427

In the Matter of the ESTATE of Laurabel GARDINER, Deceased.

SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, Appellant,

v.

Mary Jane GARDINER, Executrix of the Estate of Laurabel Gardiner, Deceased, Mary Jane Gardiner, Charles W. Gardiner, Jr., Robert F. Gardiner and Jean Gardiner, Appellees.

No. 1 CA–CIV 323.

Court of Appeals of Arizona.

March 21, 1967.

Rehearing Denied June 6, 1967.

Review Denied June 20, 1967.

Gust, Rosenfeld & Divelbess, by Richard H. Whitney, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Elias M. Romley, Craig R. Kepner, Phoenix, for Executrix, appellee.

Evans, Kitchel & Jenckes, by Joseph S. Jenckes, Jr., Phoenix, for the Life Beneficiaries, appellees.

OGG, Superior Court Judge.

This is an appeal from an order of the Superior Court of Maricopa County, Arizona, that approved the First Account and Report of Appellee Mary Jane Gardiner, Executrix of the Estate of Laurabel Gardiner, Deceased. The Appellant Shriners Hospitals For Crippled Children is the remainder beneficiary of the trust established under the will of Laurabel Gardiner, deceased. The Appellee Mary Jane Gardiner is executrix of the will, trustee of the trust established in the will and an income beneficiary of this trust. The other appellees are close relatives of the deceased and are income beneficiaries of the trust.

The general plan of Laurabel Gardiner's will, after making limited specific bequests and legacies, is to create a trust of the residue of her estate. The net income of the trust was to go to her daughter Mary Jane Gardiner and other close relatives, with the remainder of the estate to go to Shriners Hospitals for Crippled Children upon the death of the life income beneficiaries.

In this appeal we are concerned with whether the trial court erred in overruling the exceptions and approving the accounting as rendered by Mary Jane Gardiner, Executrix of the Estate of Laurabel Gardiner, Deceased.

On April 20, 1962, when the first inventory and appraisement was filed Lot 10, Buena Vista Tract, Maricopa County, Arizona, was appraised at $350,000; said sum representing the appraised value as of June 13, 1960, the date of death. On January 24, 1963, a second inventory and appraisement was filed which revalued Lot 10 at $600,000. Thereafter, Lot 1 was sold with court confirmation for the sum of $600,000. The executrix, after deducting the costs of the sale, applied the sum of $216,776.70 to income, which sum represented the difference, after costs, between the original appraised value of $350,000 and the $600,000 sales price. In other words, the executrix treated the net proceeds of the land sale in excess of the original appraisement value as income.

Shriners Hospitals For Crippled Children, the remainder beneficiary under the trust, takes the position that the entire net proceeds of the sale of Lot 10 should have gone into the principal account of the trust as trust corpus rather than having $216,776.70 distributed as income.

The basic issue in this case is whether the executrix trustee properly and legally exercised the powers and discretion granted her by the will in treating certain capital gain funds derived from the sale of Lot 10 as income rather than as principal.

■ The law of trusts generally holds that principal includes the increase in value of the original trust property, and whatever takes the place of, and represents, that property. 90 C.J.S. Trusts § 355 a, p. 642. We have adopted the Uniform Principal and Income Act which follows the common law rule set out above. Section 14–1083, subsec. B, A.R.S. However, Section 14–1082, A.R.S. (Uniform Principal and Income Act) provides that this act shall govern the ascertainment of income and principal and the apportionment of receipts and expenses between tenants and remaindermen, in all cases, except where the testator has directed otherwise or has granted discretion to the trustee or other person to do so, and where such provision is found and where it is not otherwise contrary to law, it shall control, notwithstanding this act.

■ Under paragraph E of the trust the trustee is given authority "to determine principal and income for all purposes". Therefore, the provisions of the Principal and Income Act are not controlling in this case. The trust gave the trustee certain discretion in determining principal and income and we must determine whether there was an abuse of that discretion by the trustee under the terms of this will.

■■ The basic rule for the interpretation of all wills and trusts is to ascertain the intent of the settlor or testator. The intent is to be ascertained from the contents within the four corners of the instrument, including the general plan or scheme there-

of, and when necessary or appropriate, the circumstances under which the will was made. Newhall v. McGill, 69 Ariz. 259, 212 P.2d 764 (1949). It necessarily follows that the intent of the testator controls in determining what should be considered trust principal and trust income; it is also this intent which is the controlling consideration in determining the rights as between the life income beneficiaries and the remaindermen under a trust such as we have before us in this case. In Re Heinrich's Will, 195 Misc. 803, 90 N.Y.S.2d 875 (1949); Dumaine v. Dumaine, 301 Mass. 214, 16 N.E.2d 625, 118 A.L.R. 834 (1938).

There is no argument on these general legal principles, but the parties differ in their interpretation of the testator's intent as reflected in the provisions of the will. The pertinent provisions of the will that must be studied for a determination of this case are set out as follows:

"*SIXTH:* I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, whereever situate (all of which is herein called 'the Trust Estate'), to MARY JANE GARDINER, and her successors, IN TRUST for the purposes hereinafter stated.

"A. *MANAGEMENT.* Upon the distribution of my estate, my Trustee shall take full charge and control "of the Trust Estate, and shall sell, or otherwise dispose of, all portions thereof which do not produce income at such times and upon such terms and conditions as to my Trustee shall appear proper. The proceeds of any such sale or sales shall be invested and reinvested with the object of producing income, upon such terms and conditions as to my Trustee shall appear proper, and in accordance with the powers hereinafter conferred.

\* \* \* \* \* \*

"C. *INVASIONS OF PRINCIPAL.* In addition to the payment of income, my Trustee, in her discretion, shall pay to my daughter, my said grandsons and my said daughter-in-law (so long as she does not remarry), so much of the principal of the Trust Estate as my Trustee deems necessary to enable my Beneficiaries to enjoy a comfortable standard of living with such conveniences and advantages as they may enjoy at the time of my death. In determining the amounts of principal to be paid to any Beneficiary, my Trustee shall take into consideration any other income which the Beneficiary may have and also any extraordinary requirements which may arise on account of illness, accident or the declining purchasing power of the dollar.

"D. *TERMINATION AND DISTRIBUTION.*

"(1) This Trust shall terminate upon the death of the Beneficiaries: MARY JANE Gardiner, CHARLES W. Gardiner, JR., ROBERT F. GARDINER and JEAN GARDINER.

"(2) In all events this Trust shall terminate not later than twenty-one (21) years after the deaths of the two youngest beneficiaries to survive me.

"(3) Upon the termination of this trust, the trust estate shall be distributed to the SHRINERS HOSPITAL FOR CRIPPLED CHILDREN, a corporation, to be used exclusively for the benefit of the hospital located in Los Angeles, California, as a memorial for my deceased son, CHARLES W. GARDINER, SR., and my deceased daughter-in-law, LILLIAN GARDINER. In the event at the time of said distribution to the Shriners Hospital For Crippled Children, one or more of my Beneficiaries above named shall be living, then and in that event I request said Shriners Hospital For Crippled Children that until the death of the last of said Beneficiaries it pay and distribute to the surviving Beneficiary or Beneficiaries three-fourths (¾) of the net income from the property distributed to it as herein provided.

"E. *POWERS.* My executor and Trustee, and her successors, shall have all such rights, powers and discretions as may be necessary or appropriate for

effective administration of my estate and of the Trusts created by this Will, including but without limitation: to pay, reject or compromise claims of all kinds against my estate or said Trusts respectively; to insure, improve, partition, mortgage, pledge, sell at public or private sale and convey and transfer, and to lease for terms within or extending beyond the duration of these Trusts, all or any part of my estate or of the Trust Estate, upon such terms and conditions and for such consideration as she may deem advisable; to retain, exchange, invest and reinvest in real and personal property of "all kinds in her name or in the name of her nominee, with or without disclosure of the fiduciary capacity; to participate fully in corporate reorganizations and readjustments; to vote upon stocks by proxy or otherwise; to employ and compensate attorneys, accountants, agents and brokers; to determine principal and income for all purposes, without amortizing premiums or accumulating discounts; to borrow for estate or trust purposes including advancement of her own funds; to make payment of any income or corpus to which any minor or incompetent Beneficiary of these Trusts may be entitled to receive to the guardian of such Beneficiary, or to either one or both of the parents of a minor Beneficiary, or directly to such minor or to apply the same for the benefit of such minor or incompetent; to exercise all rights, powers and discretions after the termination of the Trusts until the Trust Estate is fully distributed; to divide and distribute my estate and the Trust Estate in cash or in kind, or partly in cash and partly in kind and to determine values conclusively for that purpose; to pay to herself reasonable compensation and her necessary or reasonable expenses and to allocate such charges against income and/or principal as she shall determine; and to exercise any and all the foregoing rights, powers and discretions without giving prior notice to any person

and without first obtaining an order of any court therefor.

\*   \*   \*   \*   \*   \*

"EIGHTH: I hereby nominate and appoint MARY JANE GARDINER to be the executrix of this my Last Will and Testament, and direct that no bond shall be required of her as such executrix, and that she shall have full power and authority to sell, mortgage, or dispose of any or all of my property without order of court and upon such terms and conditions as she shall deem best; \* \* \*"

The Appellant Hospital argues under general trust principles and under the provisions of this trust that it is an abuse of discretion for the trustee to allocate the capital gain from the sale of Lot 10 to income.

It is strongly urged by the Hospital that Paragraph Sixth A of the will governs this particular fact situation by giving specific directions that the proceeds of the sale of unproductive land (such as Lot 10) should be "invested and reinvested with the object of producing income". Standing alone this position seems sound, but it ignores the fact that this power is to be exercised "in accordance with the powers hereinafter conferred". The powers subsequently conferred by the will include, among other powers, the specific power: to sell, exchange and buy real and personal property of all kinds; to determine principal and income for all purposes; to allocate charges against income and/or principal; to exercise any and all the foregoing powers without giving prior notice to any person and without first obtaining an order of any court therefor. To further illustrate the broad powers the will also gave the trustee the discretion to invade the principal and to use such funds as she "deems necessary" to enable the life beneficiaries to enjoy a comfortable standard of living. The will again provided, in the paragraph "Eighth", wherein the executrix was appointed to serve without bond, that the executrix "shall have full power and au-

thority to sell, mortgage, or dispose of any or all of my property without order of the court and upon such terms and conditions as she shall deem best."

The law is summarized in Scott on Trusts (2d Ed. 1956) at Section 233.5: "By the terms of the trust the trustee may be empowered to determine what receipts should be treated as income and what receipts as principal or to apportion receipts between income and principal, and may be empowered to determine what expenditures should be paid out of income and what expenditures out of principal or to apportion expenditures between income and principal. Where such a power is conferred upon the trustee, his determination is controlling unless he has abused the discretion conferred upon him. Whether there is an abuse of discretion depends upon the extent of the power conferred upon him. The mere fact that the trustee does not follow the rules which would be applicable if no such power were conferred upon him does not constitute an abuse of discretion. Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules."

Both parties have submitted reputable authority supporting their respective positions; however, the case of Dumaine v. Dumaine, 301 Mass. 214, 16 N.E.2d 625, 118 A.L.R. 834 (1938) appears to be one of the leading cases with a fact situation closely analogous to the case at issue. The question in the Dumaine case was whether the trustee had discretion to distribute the profit from the sale of stock held in trust to income rather than to principal. Under the Dumaine trust, the trustee had very similar powers to those conferred to our immediate case; the Dumaine power was as follows: "The trustee under this instrument shall have full power and discretion to determine whether any money of other property received by him is principal or income without being answerable to any person for the manner in which he shall exercise that discretion." The Massachusetts Court held that, the trustee would not

abuse his discretion by making such an allocation to income even though the general rule, in the absence of such discretionary power, would be that gains resulting from the sale of securities are accretions belonging to the principal of the trust fund, rather than income. The Court reasoned that, in the light of the language of the trust instrument as a whole, "full power and discretion" to determine whether any money or other property received by the trustee was principal or income would have little significance if construed to mean a discretion so to determine only in cases where there was no settled law to guide, and pointed out that by the terms of the trust instrument the trustee was to have power and discretion "without being answerable to any person for the manner in which he shall exercise that discretion". The Court also stated that, while the cause in issue did not confer an absolute and uncontrolled discretion, the discretion conferred was not an empty one, but was an important responsibility to make a determination which, if honestly exercised, called for no revision by the Court. See also the cases of Sherman v. Sherman, Ohio Prob., 202 N.E.2d 443 (1962) and In Re Bixby's Estate, 55 Cal.2d 819, 13 Cal.Rptr. 411, 362 P.2d 43 (1961).

The Appellant Hospital also objected to the premature distribution of funds from the estate to the trust life beneficiaries contending the executor-trustee failed to comply with Sections 14–652 and 14–653 A.R.S. These sections allow an early distribution of an estate where such distribution can be made without loss to creditors. In this case all creditor claims were paid and the Hospital Remainderman was not prejudiced. It is a well settled rule in trusts that when property is devised in trust to pay income to life beneficiaries, they are entitled to such income from the date of death of the testatrix. 3 Scott, Trusts, Section 234.3; In Re Williamson's Estate, 38 Wash.2d 259, 229 P.2d 312 (1951).

■ From a study of the terms of the will and the testimony given in the trial court, it is clear the decedent had great faith and trust in her daughter, whom she named executrix-trustee of her will. It also appears that the decedent's primary concern was to see her family adequately provided for during their lifetimes. After evaluating what we deem to be the intent of the decedent we do not find an abuse of discretion under the terms of the trust and the judgment of the trial court is hereby affirmed.

DONOFRIO, Acting Chief Judge, and STEVENS, J., concur.

NOTE: Chief Judge JAMES DUKE CAMERON having requested that he be relieved from the consideration of this matter, Superior Court Judge JACK L. OGG was called to sit in his stead and participate in the determination of this cause.