Mary Jane **GARDINER**, Executrix of the Estate of Laurabel Gardiner, Deceased, Plaintiff-Appellee,

v.

**UNITED STATES** of America, Defendant-Appellant.

No. 24760.

United States Court of Appeals,
Ninth Circuit.

April 17, 1972.

---

------

Paul M. Ginsburg (argued), A. Jerry Busby, Lee A. Jackson, Loring W. Post, Harry Baum, Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., Richard K. Burke, U. S. Atty., Phoenix, Ariz., for appellant.

Neal Kurn (argued), of Powers, Boutell & Fannin, Elias M. Romley, of Moore, Romley, Kaplan, Robbins & Green, Phoenix, Ariz., for appellee.

Before BROWNING and CHOY, Circuit Judges, and von der HEYDT,[*] District Judge.

BROWNING, Circuit Judge:

The government appeals the allowance of a charitable deduction, under 26 U.S. C. § 2055(a) (2) (1964), to Mary Jane Gardiner, executrix of the estate of Laurabel Gardiner, deceased. We reverse.

By her last will and testament, Laurabel Gardiner established a trust of her residuary estate. The entire net income of the trust was to be paid, in various proportions, to four members of her family, including her daughter, who was to serve as executrix and trustee. At the death of the last of the income beneficiaries, the remainder of the trust was to be paid to the Shriners Hospital, a charitable organization under 26 U.S.C. § 2055 (1964). Appellant disallowed in full a deduction taken by appellee. The district court held that the estate was entitled to the deduction. This appeal followed.

The Internal Revenue Code allows a deduction from the decedent's gross estate for transfers made for charitable purposes, 26 U.S.C. § 2055(a) (2). Where, as here, a testamentary trust is created for both private and charitable purposes, the Treasury Regulations provide for a charitable deduction only if at the time of the testatrix's death the charitable interest is "presently ascertainable, and hence severable from the non-charitable interest." Treas.Reg. § 20.2055-2(a) (1958). If the trustee has power to divert the property from the charity, "the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power." Section 20.2055-2(b).

The question presented on this appeal is whether the grant to the trustee of power "to determine principal and income for all purposes" prevented the value of the charitable remainder from being "presently ascertainable" at the time of testatrix's death.[1]

------

[*] Honorable James A. von der Heydt, United States District Judge for the District of Alaska, sitting by designation.

[1.] This question cannot arise as to estates subject to the Tax Reform Act of 1969 because §§ 201(d), (e), and (g) of that Act require that a trust pay either a fixed dollar amount or a fixed percentage of net fair market value of the trust assets to the non-charitable beneficiaries before the charitable remainder is eligible for the deduction.

See Pub.L. 91–172, 83 Stat. 487, 560–65 (codified in §§ 642(c) (5), 664, 2055(e) of the Internal Revenue Code of 1954.) See also H.R.Rep. No. 91–413, 91st Cong. 1st Sess. 58–60, U.S.Code Cong. & Admin. News 1969, p. 1645; S.Rep. No. 91–552, 91st Cong. 1st Sess. 86–91 (1969), U.S. Code Cong. & Admin.News 1969, p. 2027.

Whether the value of the bequest to charity was "presently ascertainable" at the time of the testatrix's death depends upon whether, "as of that time, the extent to which the [trustee] would divert the corpus from the charities could be measured accurately." Merchants National Bank v. Commissioner of Internal Revenue, 320 U.S. 256, 259, 64 S.Ct. 108, 110, 88 L.Ed. 35 (1943). "Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become accurately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable." *Id.* at 261, 64 S.Ct. at 111.

Whether the grant of power to a trustee to allocate receipts to either income or corpus involves a potential invasion of the corpus of such substantial but uncertain dimensions as to disqualify the remainder for charitable deduction has been before the courts of appeals in a number of recent cases. The deduction was sustained despite a grant to the trustee of broad administrative powers in Greer v. United States, 448 F.2d 937 (4th Cir. 1971).[2] The opposite result was reached in Rand v. United States, 445 F.2d 1166 (2d Cir. 1971); Florida Bank at Lakeland v. United States, 443 F.2d 467 (5th Cir. 1971); Miami Beach First National Bank v. United States, 443 F.2d 475 (5th Cir. 1971); First National Bank in Palm Beach v. United States, 443 F.2d 480 (5th Cir. 1971); and Estate of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (3d Cir. 1971). *See also* Van Den Wymelenberg v. United States, 397 F.2d 443, 446 (7th Cir. 1968).

A different result was reached in *Greer* than in the remaining cases in part because of differences in the language of the trust instruments involved. In the main, however, the result turned upon differences in state law. In *Greer* the court concluded that, notwithstanding the broad powers of administration granted the trustee, the right of the trustee to invade corpus to the detriment of the charitable remainder was sufficiently restricted by the law of North Carolina as not to affect the value of the remainder at the time of the testator's death. 448 F.2d at 947–948. In the other cases, the courts concluded that the law of the states involved did not clearly bar the possibility that the trustee might exercise broad administrative powers to invade the corpus of the trust for the benefit of the non-charitable beneficiaries to a degree not subject to prediction or accurate calculation.

The executrix argues that under the law of the State of Arizona the trustee must exercise the powers granted to her to protect the interests of all the beneficiaries, and therefore she does not have the power to divert the charitable remainder to the life beneficiaries despite the broad language of the will, citing In re Estate of Schuster, 35 Ariz. 457, 469, 281 P. 38, 43 (1929), and cases following it. *See* In re Estate of Wills, 8 Ariz. App. 591, 595, 448 P.2d 435, 439 (1968); Lane Title & Trust Co. v. Brannan, 103 Ariz. 272, 278, 440 P.2d 105, 111 (1968); and Bulla v. Valley National Bank, 82 Ariz. 84, 89, 308 P.2d 932, 935 (1957).

These cases are not particularly helpful. They merely state the general proposition that in exercising the powers conferred upon him by the trust instrument a trustee must protect the interest of all beneficiaries, act in good faith, and exercise due care and diligence. None of the cases applies this general axiom to override a specific grant of authority comparable to that involved here.

On the other hand, In re Estate of Gardiner, 5 Ariz.App. 239, 425 P.2d 427 (1967), is peculiarly relevant, for it in-

**2.** *See also* Peoples Trust Co. of Bergen County v. United States, 444 F.2d 193 (3d Cir. 1971).

volves the construction in light of Arizona law of the same grant of power in the same Gardiner trust.[3] The trustee sold for $600,000 real estate appraised, as of the date of Laurabel Gardiner's death, at $350,000, and allocated the entire net capital gain of $216,776.70 to income, payable to the non-charitable beneficiaries. The charitable remainderman, Shriners Hospital, challenged the trustee's action. The trustee's allocation was sustained.

The Arizona court noted that under Arizona Revised Statutes, section 14–1083,[4] as under the law in most jurisdictions, receipts from the sale of trust property are allocable to principal rather than income. The court also observed, however, that the Arizona statutes further provide that the person establishing the trust may grant discretion to the trustee to apportion receipts (A.R.S. § 14–1082), as Laurabel Gardiner did. The controlling consideration in determining whether the trustee abused the discretion granted by the will to apportion receipts, the court stated, is the intent of the testatrix: "the intent of the testator controls in determining what should be considered trust principal and trust income; it is also this intent which is the controlling consideration in determining the rights as between the life income beneficiaries and the remaindermen . . . ." 425 P.2d at 429.

The Arizona court noted that the language of the will conferred broad powers upon the trustee. The court then quoted and adopted the statement in 3 A. Scott, The Law of Trusts § 233.5 (2d ed. 1956), that where the power to allocate receipts to income or principal is conferred upon the trustee, "his determination is controlling unless he has abused the discretion conferred upon him. Whether there is an abuse of discretion depends upon the extent of the power conferred upon him. The mere fact that the trustee does not follow the rules which would be applicable if no such power were conferred upon him does not constitute an abuse of discretion. Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules." 425 P.2d at 431.

The court went on to quote with approval from Dumaine v. Dumaine, 301 Mass. 214, 16 N.E.2d 625 (1938), emphasizing that a trustee empowered to allocate receipts to income or principal was not bound by the general rules governing such allocation, and was not confined to making a discretionary determination only when there was no settled law to guide him. The trustee's discretion "was an important responsibility to make a determination which, if honestly exercised, called for no revision by the Court." [5]

From the language of the will, and the testimony given at trial, the Arizona court found that the decedent had placed great faith in her daughter, the executrix-trustee, and that "the decedent's

---

3. For our purpose it does not matter that the decision was rendered by the State Court of Appeals rather than the State Supreme Court. "An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question." Fidelity Union Trust Co. v. Field, 311 U.S. 169, 177–178, 61 S.Ct. 176, 178, 85 L.Ed. 109 (1940). *See* West v. American Tel. & Tel. Co., 311 U.S. 223, 236–237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). *See. generally* 1A J. Moore, Federal Practice ¶ 0.307, at 3302–10 (2d ed. 1965).

4. "All receipts of money or other property paid or delivered as the consideration for the sale . . . of property forming a part of the principal . . . shall be deemed principal . . . . Any profit or loss resulting upon any change in form of principal shall inure to or fall upon principal."

5. Appellant argues that the reach of Dumaine v. Dumaine, as interpreted by the Arizona court, was significantly reduced by Old Colony Trust Co. v. Silliman, 352 Mass. 6, 223 N.E.2d 504 (1967). As the government responds, however, "The attention of the Arizona Court of Appeals was directed to both the *Dumaine* and the *Silliman* decisions, and the court chose to follow the earlier ruling."

primary concern was to see her family [the noncharitable beneficiaries] adequately provided for during their lifetimes." 425 P.2d at 432. *Cf.* Henslee v. Union Planters National Bank, 335 U.S. 595, 598–599, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Merchants National Bank v. Commissioner of Int. Rev., *supra,* 320 U.S. at 263, 64 S.Ct. 108, 88 L.Ed. 35.

Based upon this evaluation of the intent of the decedent, the Arizona court concluded that the trustee had not abused her discretion in allocating the entire capital gain from the sale of trust property comprising the major portion of the estate to the noncharitable beneficiaries.

Faced with this decision we feel obliged to hold that the taxpayer has failed to carry her burden "of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are . . . accurately calculable." Merchants National Bank v. Commissioner of Internal Revenue, *supra,* 320 U.S. at 261, 64 S.Ct. at 111.

The taxpayer argues that distribution of capital *gains* to the income beneficiaries did not diminish the corpus of the trust. But in these inflationary times it will have that practical effect. Unless in this case the effects of inflation over the extended period of the non-charitable life estates are offset by the addition of capital gains to corpus, the dollars eventually received by the charitable remaindermen may well have only a fraction of the value of the dollars allowed the estate as a charitable deduction.[6]

In any event, what the trustee has done is not determinative; the question is what she has the power to do. Florida Bank at Lakeland v. United States, *supra,* 443 F.2d at 473; Rand v. United States, *supra,* 445 F.2d at 1169; Estate of Stewart v. Commissioner of Internal Revenue, *supra,* 436 F.2d at 1285, 1288–1289. While the trust has thus far enjoyed capital gains on the sale of trust property, it may suffer losses on future sales. In the light of the opinion of the Arizona court in In re Estate of Gardiner, *supra* we cannot share taxpayer's confidence that the Arizona courts would require the trustee to recoup such losses from the income beneficiaries. Charging capital losses to principal, while at the same time allocating capital gains to income, might well result in serious invasion of the trust corpus. *See* Florida Bank at Lakeland v. United States, *supra,* 443 F.2d at 472–473; Taggart, Charitable Deductions for Transfers of Remainder Interests Subject to Invasion, 21 Tax.L.Rev. 535, 569–70 & n. 62 (1966). The Arizona statute, note 4, *supra,* provides that in the absence of a contrary intention by the testatrix, such losses *will* be charged to the remainderman. Such an allocation would be consistent with the testatrix's intention, as found by the Arizona court, to favor the non-charitable income beneficiaries.

The government argues that other powers granted the trustee support the conclusion that the value of the charitable remainder could not be accurately calculated at the time of the testatrix's death.[7] Since this contention does not appear to have been made in the court below, we have not considered it.

Reversed.

---

6. *Cf.* Miami Beach First National Bank v. United States, *supra,* 443 F.2d at 477–478. *But see* Rudick & Gray, Tax Consequences of Gifts to Charity, 16 Tax L.Rev. 273, 299 n. 101 (1961); Taggart, Charitable Deductions for Transfers of Remainder Interests Subject to Invasion, 21 Tax L. Rev. 535, 566–568 (1966).

7. These powers included:

(1) Full authority to sell, exchange, and buy real and personal property of all kinds;

(2) Power to allocate the trustee's compensation and expenses to either principal or income *as she shall determine;*

(3) Power "to exercise any and all the foregoing rights, powers, and discretions without giving prior notice to any person and without first obtaining an order of any court therefor."