Frank S. Emmert

*v.*

The Old National Bank of Martinsburg, *etc., et al.*

(No. 13812)

Decided July 11, 1978.

*Loy, Shingleton & Caryl, Michael E. Caryl* for appellant.

*Rice, Hannis & Douglas, Lacy I. Rice, Jr., and Charles F. Printz, Jr.,* for appellees.

NEELY, JUSTICE:

This appeal concerns a trustee's exercise of discretionary powers granted by a trust instrument. The appellant, Frank S. Emmert, is an income beneficiary of a testamentary trust established by the will of his father, Allen R. Emmert. He claims to be in necessitous circumstances and argues that, under the terms of the trust, the trustee, The Old National Bank of Martinsburg, must invade the trust corpus to aid him in his distress. The trustee bank, which prevailed in the Circuit Court of Berkeley County below, refuses to invade the trust corpus for the benefit of Frank S. Emmert, and as appellee here, denies that the trust imposes any such obligation on it.

Basically, the dispute in this case is between Frank S. Emmert and The Old National Bank of Martinsburg, as trustee, but other parties are necessarily involved and will be affected by our decision. These parties include Allen R. Emmert, Jr., the appellant's brother who is the other primary beneficiary of the trust, and a number of contingent beneficiaries who have more remote interests in the trust. We hold that the trustee must make a limited invasion of the trust corpus for the benefit of Frank S. Emmert.

I

The cornerstone of the appellant's argument is the following provision of the testamentary trust:

> Earnings accumulated from the operation of said trust estate, or principal if said accumulations are insufficient, may be used by said Trustee [Old National Bank of Martinsburg] for the purpose of adequately providing for the comfort and support of either or both of my said sons, if necessary at any time. Advances or expenditures for either son in excess of advances or expenditures for the other son shall be charged against the share of the one for whom the advances or expenditures are made.

The appellant contends that this provision authorizes the trustee to invade the trust corpus and make a distribution to him of $100,000, which amount will adequately meet his current needs, according to the amended petition he filed in the circuit court below. The appellant acknowledges that the provision's use of the language "may," "adequately," and "if necessary" vests the trustee with almost unfettered discretion to make or withhold principal distributions for the comfort and support of the trust beneficiaries; however, he argues that the circumstances of his need make it an abuse of that discretion for the trustee to refuse his demand for $100,000.

For appellee's part, The Old National Bank of Martinsburg maintains that to the extent it has discretion to invade the trust corpus it has properly refused to do so. Alternatively, the bank contends that it does not have the discretion to distribute $100,000 to Frank S. Emmert because such a large distribution of principal would defeat the purposes of the trust. We examine the second of these argument's first, so that the provisions of the trust upon which the bank relies may be juxtaposed here with the provision upon which the appellant relies.

The bank feels that if it were to make a $100,000 principal distribution to Frank S. Emmert it would be obligated to make a like distribution to his brother, Allen R. Emmert, Jr. The bank infers this obligation from the following provision of the trust:

> I [testator] desire that each of my sons be treated equally in the payments, advances, and the distribution of income and the corpus of said trust.

Inasmuch as the trust assets were valued during the proceeding below at approximately $230,000, the withdrawal of two $100,000 payments would substantially liquidate the trust, leaving a balance of only $30,000. Among other consequences, reducing the trust corpus to $30,000 would require the trustee prematurely to dispose of a store building, valued at $55,000, which the trustee was admonished by the testator to retain. The testator

empowered the trustee to sell all of his real estate, if that were deemed advisable, except the store building, for which the testator made special provision:

> I direct my Trustee to hold my merchandise store building property, located at 108-110 North Queen Street, Martinsburg, West Virginia, as a part of my trust estate and use the same in the operation of said store business, as is hereinafter provided, or rent the same.

Reducing the trust corpus to $30,000 would also jeopardize the trustee's ability to carry out other provisions of the trust. Not enough income would be generated for the trustee to make required $250 monthly payments to each of the testator's sons. The failure to pay the monthly payments in full, however, would not be a serious defeat of a trust purpose, since the testator provided for pro rata reductions in the monthly payments as follows:

> If the income at any time is insufficient to pay the costs and expenses, and taxes, as above provided, and also the monthly payments to each son as above provided, then and in that event the amounts shall be reduced payable to said sons so that said monthly payments shall not exceed the income.

Another specific trust provision the trustee might be unable to carry out is the following:

> If either or both of my sons are married and die without issue surviving, but leave a widow surviving, said widow of the deceased son or sons shall be paid the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00).

The trustee feels a fiduciary responsibility to retain at least enough trust assets to meet this potential $50,000 obligation.

In addition to its argument that the large principal distribution demanded by Frank S. Emmert would frustrate specific and important purposes of the trust, the trustee argues that Frank S. Emmert's comfort and sup-

port can be assured without even a modest invasion of the trust corpus. However, the appellant testified, and it is not contradicted, that he suffers from an incurable disease known as Mallory-Weiss syndrome,[1] the symptoms of which are weight loss, frequent nausea, and general lassitude. Because of his condition the appellant is apparently unable to obtain employment in sales, for which he is qualified by virtue of his background, education, and experience, or even to hold a steady job as a taxicab driver. An extended period of rest would be beneficial to his health, but the most he can hope for is slight improvement, not a complete cure. The appellant also needs dental work and new bifocal glasses.

At the time of the proceeding below the appellant was $48,000 in debt. His debt was an accumulation of hospital and other medical expenses, moving and storage charges, back rent, department store arrears, and personal loans. Other than household furnishings, which were in storage and, in any event, not readily marketable, the appellant owned no assets that could be used to reduce his debt or meet his other pressing needs. His only financial resources immediately available are the $250 monthly payments provided by the testamentary trust and one-half the income from an *inter vivos* trust which had assets at the time of the proceeding below of approximately $60,000. Also, the appellant and his brother were each entitled to receive in June 1976 one-fourth of the *inter vivos* trust assets as a principal distribution.[2] We have no reason to believe the scheduled principal distributions were not made in 1976, after which the beneficiaries' income payments would be correspondingly reduced. As noted above, the appellant's precarious

---

[1] The medical definition of Mallory-Weiss Syndrome is:

Hematemesis or melena that follows typically upon many hours or days of severe vomiting and retching, traceable to one or several slitlike lacerations of the gastric mucosa, longitudinally placed at or slightly below the esophagogastric junction. *Dorland's Illus. Medical Dictionary* 1522 (25th ed. 1974).

[2] The terms of the *inter vivos* trust called for it to be terminated in June 1981, at which time its remaining assets would be distributed in equal shares to the appellant and his brother.

health made it unlikely he could supplement his trust income by working.

The trustee's analysis of the appellant's financial position leads it to conclude that the appellant has adequate resources to provide for his own comfort and support without invasion of the testamentary trust corpus. Financial experts could debate the merits of the trustee's assessment because it appears to be based more upon the appellant's alleged waste of money received in the past than upon his present ability to meet his expenses and discharge his debts. Much of the trustee's opposition to the appellant's demand for an invasion of the trust corpus seems to stem from the trustee's concern that the appellant would use the money unwisely, and therefore, much of the trustee's evidence in the trial court was calculated to show that over the years the appellant had received large sums of money from his father's estate and squandered it all. The portrayal of the appellant as a profligate son no doubt contributed to the trustee's success in the trial court, but we question the relevance of the appellant's past conduct to his present needs for comfort and support. Furthermore, we note appellant's advancing age and declining health which indicate that the trustee's efforts at moral reformation, which might be appropriate with a younger beneficiary, are probably doomed to failure with no effect other than penury for the beneficiary and his family.

## II

Having examined the facts and the respective positions of the parties, we now turn to a discussion of the applicable legal principles. We start this section, as we did the last, by referring to the key trust provision:

> Earnings accumulated from the operation of said trust estate, or principal if said accumulations are insufficient, may be used by said Trustee [Old National Bank of Martinsburg] for the purpose of adequately providing for the comfort and support of either or both of my said sons, if necessary at any time. Advances or expenditures

for either son in excess of advances or expenditures for the other son shall be charged against the share of the one for whom the advances or expenditures are made.

We need not resort to interpretation or construction to say that this provision plainly authorizes the use of trust principal for the comfort and support of the trust beneficiaries, including the appellant, Frank S. Emmert. The ambiguity with respect to principal distributions is not whether they are permitted, but rather, under what circumstances they are required. It appears there is a two-pronged standard. First, there must be some necessity for making a distribution i.e., "if necessary at any time." Second, the distribution is limited to an amount which provides an adequate level of "comfort and support" to the beneficiary receiving the distribution. To be useful as a guideline for the trustee, this vague, two-pronged standard requires judicial construction.

The rules of construction for wills are so well established that they hardly bear repeating here. Nonetheless, we include a brief survey of the relevant rules which inform our discussion of the will and testamentary trust involved in this appeal. The cardinal rule in the construction of wills is that the testator's intention controls, unless it is contrary to some positive rule of law or principle of public policy. *Farmers & Merchants Bank v. Farmers & Merchants Bank*, W. Va., 216 S.E.2d 769 (1975). A will speaks from the date of the testator's death, and not from the date of the will's execution, unless the language of the will indicates a contrary intention, *W.Va. Code*, 41-3-1 [1923]; however, the circumstances surrounding the testator when he made his will may be considered in ascertaining his intention, *Weiss v. Soto*, 142 W. Va. 783, 98 S.E.2d 727 (1957). The intention of the testator is to be gathered from the whole instrument, not from one part alone. *Rastle v. Gamsjager*, 151 W. Va. 499, 153 S.E.2d 403 (1967).

What then was intended by the testator to be an adequate level of comfort and support? We believe the testator had reference to the standard of living to which each

of his sons was accustomed when he died and which his upbringing of them led them to expect. Our interpretation is reinforced and supported by an interpretation of a similar support-maintenance provision in the case of *Smith v. Smith*, 134 W. Va. 842, 62 S.E.2d 347 (1950). The adequate standard of living the testator had in mind for his beneficiaries would not permit them to enjoy new extravagances or to suffer unexpected deprivations.

A reading of the whole will and examination of the surrounding circumstances makes clear the testator's intention with respect to the second part of his standard, the requirement that there be some necessity for the principal distributions. The testamentary trust was established out of the residue of the testator's estate and the bulk of his assets went into it. Its design and operating principles quite naturally evidence a concern for the testator's primary beneficiaries, his two sons. Nonetheless, as so often is the case with large residuary bequests, the testator wanted later generations of his lineal descendants or collateral relatives to enjoy such of the fruits of his estate as were not consumed by the primary beneficiaries. Thus the testator created a trust which benefited his two sons and yet had the potential to spread his generosity out over several generations. It should be pointed out here that the testator, who died in 1961, was very likely mindful of the tax advantages to be gained from generation-skipping gifts. To accommodate his primary interest in his sons' welfare with his secondary interest in extending the scope of his generosity to include others, the testator imposed the "necessity" requirement which had to be satisfied before his sons could encroach on the trust corpus for their comfort and support. This requirement made the trust corpus available to the sons as a last resort to sustain them only after their other financial resources were exhausted. This interpretation is in accord with *Re Martin's Will*, 269 N.Y. 305, 199 N.E. 491 (1936), which, on the question of whether other financial resources of the beneficiary ought to be taken into account, draws the following distinctions:

> The primary question in this class of cases always is, Does the will constitute an absolute gift of support or maintenance which makes it a charge upon the income from the estate and upon principal? If so then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered in determining whether such need exists.

Of course the testator must have hoped such manifest necessity would not arise, so that his residuary estate could pass intact to the testator's other lineal descendants or collateral relatives.

Other provisions the testator made for his sons' financial support and welfare confirm our analysis of the testamentary trust "necessity" requirement. Each son received a cash bequest from the father's estate, and provision was made for the sons to take over the operation of the family business, which evidently could provide them a good living. In the event one son declined to carry on the family business, as happened here with Frank S. Emmert, he would receive his fair share of the worth of the business, which could be used as a stake in some other business undertaking. Also, as noted above, the testator established an *inter vivos* trust designed to provide his sons with substantial income and principal distributions over a twenty year period. Through all of these means, the testator made it possible for his sons to provide for their own comfort and support; however, in the event of unusual circumstances or setbacks, the testamentary trust corpus was available to the sons, *if necessary at any time*. It does not strain the meaning of the underlined language, when read in the context of the testator's entire dispositive plan, to say that it guards the testamentary trust corpus against routine encroachment for comfort and support of the testator's sons. The testator intended that principal distributions be made only in exceptional circumstances of necessity,

after the exhaustion of other financial resources, and we so hold. This case is distinguishable, both on its facts and also with respect to the precise trust language used, from the case of *Snider v. Robinson*, 85 W. Va. 673, 102 S.E. 482 (1920), which by dictum suggests that the availability of other financial resources is an irrelevent consideration in construing a beneficiary's power to use "such part of the principal of the above fund as may be necessary to her complete comfort and support." 85 W. Va. at 679, 102 S.E. at 484.

At this point the question arises whether a principal distribution from the testamentary trust to provide adequate support and comfort for Frank S. Emmert is necessary. A fair reading of all the evidence in the case indicates that such a distribution is necessary. The appellant has exhausted all financial resources available to him and is seeking a level of comfort and support to which he was accustomed at the time of his father's death and which is in accord with the station in life his upbringing prepared him to assume. Much of his present financial misfortune, with respect both to his accumulated debt and to his reduced earning capacity, stems from his poor health, which, of course, neither he nor his father could have anticipated. Catastrophic illness is one of the exceptional circumstances the testator very likely had in mind when he made provision for principal distributions from the testamentary trust in time of necessity.

While the trust used words of discretion such as "may", the discretion of the trustee is not without limits. When the trustee acts outside the bounds of reasonable judgment the court will intervene. *Judge v. Kortenhaus*, 79 N.J. Super 574, 192 A.2d 320 (1963). Since it was the testator's intent that distributions from corpus for the beneficiary's comfort and support were to be made when necessary and such distributions are necessary, the appellee, The Old National Bank of Martinsburg, abused its discretion in refusing to pay any portion of the corpus to Frank S. Emmert.

It is obvious that any principal distributions made to Frank S. Emmert will reduce the trust remainder available to the contingent beneficiaries. Also, if the distributions are large enough, the trust may be unable to meet certain specified contingent obligations such as the payment of $25,000 to Frank S. Emmert's wife, assuming, as seems likely, he dies without issue. Any time a corpus invasion privilege is granted there exists the possibility, as here, that remainder interests will be reduced or eliminated. Such a possibility is inherent in the nature of corpus invasion privileges and cannot be used to defeat a lawful and proper invasion of corpus. The trustee's arguments in this respect are not well taken. Furthermore, it is evident that the testator's primary concern was the welfare of his closest blood kin, his sons, and for that welfare all else could be sacrificed, if necessary. Accordingly we hold that provisions such as the one under consideration should be given a liberal interpretation by trustees, who are frequently overly concerned about potential liability.[3]

---

[3] A rule which in many circumstances implies a liberal construction of invasion provisions comes from a recognition that only discretionary invasion is consistent with substantial tax savings under prior law, a fact of which settlors' attorneys (as a class) have *usually* been aware, while settlors (as a class) have usually been unmindful of the inherent rigidities in dealing with professional trustees who are given discretionary powers. Settlors have usually followed advice of counsel, who may themselves have working relationships with professional trustees, and notwithstanding the particular settlor's intention that such provisions be construed as liberally as possible, broad discretion to withhold assets must necessarily be given to the trustee for tax reasons. For example, a pure life interest is not included in the holder's estate under *I.R.C.* § 2033 unless it is one he retained when making a lifetime transfer. *I.R.C.* § 2036. However, when a life beneficiary has the power to invade corpus *at will*, he has the power to appoint corpus to himself and the entire trust property will be included in his estate. *I.R.C.* § 2041. Therefore, a settlor will provide that a trustee "may" invade for the benefit of the life income beneficiary to gain favorable tax treatment when he intends the trustee "shall" invade as a practical matter. However, a professional trustee has a vested interest in retention in the form of charges and fees proportionate to the value of property administered. Furthermore, professional trustees are reluctant to make discretionary decisions because of potential

## III

It now remains for us to outline the mechanics of the principal distributions to which Frank S. Emmert is entitled. It is clear from a reading of the entire will, and from the language quoted above relating to the testator's desire for his two sons to receive equal treatment, that in the end no one son should benefit more from the trust assets than the other son. To accomplish this goal the trust provided an accounting method by which extraordinary distributions from the trust could be charged against the share of the son receiving the distribution:

> Advances or expenditures for either son in *excess* of advances or expenditures for the other son shall be charged against the share of the one for whom the advances or expenditures are made. [emphasis added]

Accordingly, to implement the testator's intent, and to protect the interests of the son who has not sought a principal distribution, we are remanding this case to the circuit court for the entry of an order requiring the trustee to segregate the trust assets into two equal shares for separate administration. The segregation of the trust assets in this manner will simplify accounting procedures for the trustee and assure equal treatment for both sons despite the principal distributions ordered to be made on behalf of the appellant, Frank S. Emmert. Such distributions shall be made only from Frank S. Emmert's segregated share and will not diminish the share to which his brother or his brother's heirs will ultimately be entitled.

We disagree with the trustee's contention that every principal distribution to Frank S. Emmert must be matched by an equal distribution to his brother. Such a literal interpretation of the will's "equal treatment" pro-

---

liability and usually prefer to follow, in normal bureaucratic style, the safest of all paths. We must recognize the interrelationship among structural, institutional, and organizational factors on the one side, tax consequences on the second side, and the intent of the testator on the third side.

vision is not justified in view of the will's provision for charging excess advances and expenditures made to or on behalf of one son against his share of the trust. This provision obviously contemplates that "excess" distributions may create an imbalance from time to time, and the provision would have no meaning if every principal distribution to one son were matched by an equal distribution to the other. We do not presume the testator included meaningless language in his will, and in fact we believe he made sensible provision to meet the varying needs of the trust beneficiaries without sacrificing essentially equal treatment in the end for each branch of the family. In particular we note that giving matching principal distributions in this instance to Frank S. Emmert's brother, who does not seek or apparently need any, would cause the brother's heirs to lose the estate tax savings that otherwise would have accrued to them by virtue of the trust's generation-skipping features.[4]

---

[4] The federal estate tax is imposed upon transfers of property by reason of death. The federal gift tax is imposed upon gratuitous transfers of property during life. Prior to the Tax Reform Act of 1976, Pub. L. No. 94-455, 94th Cong., 2d Sess. (1976), federal estate and gift taxes could be avoided when passing property to successive generations because the termination of a beneficiary's interest in a trust was not a "transfer" unless the beneficiary was the grantor (settlor of the trust) or held a general power of appointment over the trust property. This was true even when the beneficiary held powers usually associated with ownership such as the right to receive income from the trust, the power to invade principal (if limited by an ascertainable standard), the power to draw annually from his share of principal the greater of 5 percent or $5,000, a special power of appointment over his share of the principal, or the right to manage the trust property by serving as trustee.

In this case, the initial transfer by Allen R. Emmert to The Old National Bank of Martinsburg, as trustee, would have been subject to federal estate tax as part of the transferor's estate. However, upon the sons' death, with issue, the property passing to the sons' issue under the trust would not be taxed because there was no "transfer". If we were to require the trustee to distribute equal amounts to Allen R. Emmert, Jr. as were distributed to Frank S. Emmert, the amounts so distributed would be included in Allen R. Emmert's estate if he still held them at his death and subject to federal estate tax. If he disposed of them gratuitously during his

Accordingly, to preserve the testator's dispositive plan with respect to the brother, we wish to emphasize that the appellant's brother does not have a right to principal distributions under State law and can only receive such distributions if he makes a showing of need to be demonstrated in the same manner as the appellant himself must demonstrate need under our construction of the terms of the trust. Principal distributions to the appellant should not automatically be matched by distributions to the appellant's brother.

Finally, we come to the question of appellant's needs. Having determined that The Old National Bank of Martinsburg, as trustee, has abused its discretion in refusing to make principal distributions to Frank S. Emmert, we are remanding this case to the Circuit Court of Berkeley County for a hearing to determine the frequency and amount of principal distributions. The circuit court should consider all the evidence concerning the appellant's assets, liabilities, and available financial resources. It is the present needs of the appellant and not his past extravagances that should control the court's determination. *Akers v. Kentucky Title Trust Co.*, 279

---

life they would be subject to federal gift tax. This would defeat the tax saving advantages of this trust. If we allow Allen R. Emmert's share of the property to remain in trust to be paid to his issue upon his death, then no federal estate or gift tax will attach to that occurrence.

Under the Tax Reform Act of 1976 the federal estate and gift tax laws remain unchanged in this area but a new generation-skipping tax, 1.R.C. §§ 2601-2622 (1976), is imposed to avoid former tax avoidance mechanisms. Very basically, it applies to transfers made under (1) irrevocable trusts (or their equivalents) created after April 30, 1976, (2) revocable trusts (or their equivalents) created or amended after April 30, 1976, and (3) revocable trusts (or their equivalents) created before May 1, 1976 unless the grantor dies before January 1, 1982, in circumstances where any of the numerated trusts provide for splitting benefits between two or more generations which are younger than the generation of the grantors of the trusts; however, it is important to this case and the state of the law for many years to recognize that this revision which is quite unfavorable to the taxpayer does not apply to the trust under consideration as well as all pre-1976 trusts because of the "grandfather clause."

Ky. 727, 132 S.W.2d 83 (1939). At the same time, blind approval of appellant's demand for $100,000 should not be given because it is the amount necessary for comfort and support and not what the beneficiary desires that is controlling. *Keith v. Worchester County Trust Co.*, 338 Mass. 41, 153 N.E.2d 630 (1958). The court can easily determine support but meaning must also be given to "comfort." The circuit court should keep in mind that comfort is not a "mere quantum sufficient to eat, to drink and to wear..." but that it denotes whatever is necessary to give security from want, including reasonable physical, mental and spiritual fulfillment. *Forman v. Whitney*, 2 Keyes (N.Y.) 165, 2 Abb. Pr. 163 (1865). A meager distribution might not fulfill the testator's intentions, but at the same time one too large could cause detriment to the beneficiary himself. The court should weigh the possibility that too rapid a reduction of principal could leave the beneficiary in want later in life (contrary to the testator's intention that he be provided for) and at the same time consider the beneficiary's needs and his station in life. *Martin v. Kimball*, 86 N.J. Eq. 10, 96 A. 565 aff'd. 86 N.J. Eq. 432, 99 A. 1070 (1916). Furthermore the bank should consider the probable life expectancy of Frank Emmert and the maximum benefit which combined interest and principal can provide him during his remaining life in the event that he is totally destitute of other sources of income.

We hope the hearing fairly accommodates all the competing interests of existing and contingent beneficiaries, is faithful to the testator's intent, and is just under all circumstances. We hope that it marks the end of protracted and expensive litigation in this case, but we cannot say that in the event of some extraordinary and unanticipated circumstances the appellant's needs may not change. In such event we hope the trustee will voluntarily exercise its discretion to increase the distributions if the appellant's needs are greater, and we hope the appellant will voluntarily accept a reduction in the principal if the circumstances warrant.

*Reversed and remanded.*