265 P.3d 364

**In re The Matter of ESTHER CAPLAN TRUST FBO Arlene Sova.**

**Eric J. Bistrow; Laurie Shapiro; and Lyle Bistrow, the Remaindermen, Appellants,**

v.

**Arlene Sova; Citigroup Trust–Delaware, NA, as co-trustee of the Esther Caplan Trust FBO Arlene Sova, Appellees.**

**No. 1 CA–CV 10–0108.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 1, 2011.

Burch & Cracchiolo, P.A. By Steven J. Lippman, Phoenix, Attorneys for Appellants.

Frazer, Ryan, Goldberg & Arnold L.L.P. By John R. Fitzpatrick, T.J. Ryan, Phoenix, Attorneys for Appellee Citigroup.

Kile Law Group P.C. By Emily B. Kile, Phoenix, Attorneys for Appellee Sova.

## OPINION

DOWNIE, Judge.

¶ 1 In this opinion, we examine the obligations of a trustee vested with "sole discretion" over principal distributions to a lifetime beneficiary. We adopt certain factors from the Restatement (Second) of Trusts for evaluating the exercise of the trustee's discretion. We also affirm the *in camera* review procedure adopted by the superior court, though we modify its order to include consideration of the Restatement factors.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Esther Caplan died in 1983. Her will created two trusts, each funded with one-half her residuary estate. One trust was created for the lifetime benefit of Caplan's daughter, Arlene Sova (the "Trust"); the other trust was for the lifetime benefit of Caplan's son, Elvin Bistrow. Caplan's grandchildren, appellants Eric Bistrow, Laurie Shapiro, and Lyle Bistrow (collectively, the "Remainder Beneficiaries"), are remainder beneficiaries of each trust.[1]

¶ 3 Sova and Appellee Citigroup Trust–Delaware, NA ("Citigroup") are co-trustees of the Trust. Sova is entitled to all Trust income during her lifetime. The Trust allows for principal distributions, in the corporate trustee's "sole discretion," if a lifetime beneficiary has a "need to encroach" on the Trust corpus.

¶ 4 In December 2006, Sova asked Citigroup to begin making principal distributions to her of approximately $35,000 per year. Citigroup required Sova to provide it with financial information, and, based on that information, began making distributions from the Trust corpus to her.

¶ 5 Eric Bistrow subsequently asked Citigroup for information regarding Trust distributions. Among other things, he questioned Sova's standard of living and expressed concern that "a full and fair investigation and/or disclosure of [Sova's] financial position has not taken place." Eric Bistrow asked Citigroup to consult the Remainder Beneficiaries and "obtain their input regarding decisions that impact their rights, including release of principal" to Sova. Citigroup responded to Eric Bistrow, stating:

> While I understand your concern as a remainderman of this account, this trust was set up by Esther Caplan for the benefit of her daughter, Arlene for her life. During Arlene's lifetime, the corporate trustee has sole discretion with regard to principal invasion. When exercising our discretion, our policy requires that we reference the document and request a current budget and tax return. Based upon the information we received from Arlene in January, we made an informed decision and principal invasions were approved through December 2008. Any further requests for principal invasions will be reviewed in the same manner.

¶ 6 Further correspondence ensued between Citigroup and Eric Bistrow. In July 2009, Citigroup filed a petition in the superior court, seeking, *inter alia*, judicial approval for principal distributions it had made to Sova and instructions regarding any future distributions. Citigroup advised that its Trust Advisory Committee had reviewed Sova's requests and, "during a period of dis-

---

1. Elvin Bistrow died in 1998. His trust assets were distributed to the Remainder Beneficiaries.

tressed economic conditions," made principal payments to her totaling $73,403.35. Citigroup framed the issue presented by its petition as follows:

> [Citigroup] has attempted to remain neutral in balancing the needs of the Income Beneficiary and the interests of the Remainderman. Nevertheless, [Citigroup] is being pulled in two opposing directions. ARLENE SOVA, through counsel, has demonstrated that she has reasonable needs that can not be satisfied solely from her available sources of income. On the other hand, the Remainderman, specifically ERIC BISTROW, has challenged [Citigroup] regarding the discretionary distributions of principal paid to ARLENE SOVA, and, as to whether [Citigroup] is satisfying their fiduciary obligations to the Remainderman.

¶ 7 In response, the Remainder Beneficiaries argued Citigroup had failed to adequately investigate Sova's needs or advise them before making principal distributions. They opposed future distributions "without adequate and complete investigations of Arlene Sova's financial circumstances" and suggested specific standards Citigroup should apply. The Remainder Beneficiaries further argued Citigroup should be required to share information about Sova's finances with them and explain "its rationale for payment of principal."

¶ 8 The superior court heard oral argument regarding "past and future principal distributions from the Trust." By order dated November 25, 2009, the court approved the past principal disbursements. It also addressed future principal distributions, directing Sova to provide financial information annually to Citigroup and advise the corporate trustee of any "substantial and continuing change in her financial condition." The court ordered Citigroup to "apply the policies and procedures it has in place" in determining whether Sova "has an adequate need for principal payments."[2] It denied the Remainder Beneficiaries' request for Sova's financial information, concluding "the

provision of such actual personal financial information to other beneficiaries would be unreasonable under the circumstances." The court did, however, order Citigroup to send the Remainder Beneficiaries statements disclosing all income and principal disbursements from the Trust. It also established a procedure for resolving future challenges the Remainder Beneficiaries might assert, stating:

> Following the receipt of said quarterly statements, the Remainder Beneficiaries may challenge a distribution within the proper statute of limitations by filing a petition of objection with the Court. The Court shall review the items relied upon by [Citigroup] when the discretionary distribution was made. The Court shall review all personal financial information "in camera."

¶ 9 The Remainder Beneficiaries timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(J).

## DISCUSSION

### I. Past Principal Distributions

¶ 10 According to the Remainder Beneficiaries, A.R.S. § 14–10813(A) required Citigroup to notify them before making principal distributions from the Trust and to share financial information received from Sova. We disagree.

¶ 11 The past principal distributions are not governed by § 14–10813(A). That statute became effective *after* the challenged distributions were made. *See* 2008 Ariz. Sess. Laws, ch. 247, § 16 (2d Reg.Sess.), § 18(A)(5) (the Arizona Trust Code *does not affect* "[a]n act done before January 1, 2009.") (emphasis added). The predecessor statute, A.R.S. § 14–7303, merely required a trustee to "keep the beneficiaries of the trust reasonably informed of the trust and its administration." The record establishes that Citigroup complied with these relatively minimal requirements.

---

2. The court referenced Citigroup's "practice to consider items which may include current tax returns, budget and other financial statements."

¶ 12 The Remainder Beneficiaries received copies of the Trust. Two of them have received monthly statements and year-end reports.[3] When Eric Bistrow questioned principal distributions disclosed in Citigroup's statements, the trustee responded to his inquiries. Citigroup advised that it had followed established policies and procedures for making discretionary distributions and had reviewed Sova's financial circumstances, including tax information and a budget.

## II. Future Principal Distributions

¶ 13 We next consider whether the procedure adopted by the superior court for resolving disputes about any future principal distributions is appropriate. The parties have focused on A.R.S. § 14–10813(A), which reads:

> Unless the trust instrument provides otherwise, a trustee shall keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests. Unless the trustee determines that it is unreasonable under the circumstances to do so, a trustee shall promptly respond to a beneficiary's request for information related to the administration of the trust.

¶ 14 The superior court's order is consistent with keeping the Remainder Beneficiaries "reasonably informed about the administration of the trust," which is essentially the same duty imposed by the predecessor statute. And, as noted *supra*, ¶¶ 11–12, even before the superior court's order, Citigroup was providing the Remainder Beneficiaries with information regarding the Trust's administration.

■ ¶ 15 The next question is whether the superior court impermissibly relieved Citigroup of its duty to inform the Remainder Beneficiaries "of the material facts necessary for them to protect their interests." A.R.S. § 14–10813(A). As a threshold matter, we note that the Remainder Beneficiaries significantly overstate their role, rights, and interests. They claim, for example, an entitle-

ment to "weigh in" on trustee decisions about principal distributions and to "provide ideas or input." And the Remainder Beneficiaries argued below that Sova must provide them with exhaustive financial information, including:

a. A schedule of income showing all sources of income, including, but not limited to, social security income, dividends, interest, pensions, and any and all other payments that she receives.

b. A schedule of expenses including, but not limited to household expenses, transportation expenses, clothing expenses and any other ordinary expenses that she incurs.

c. Documents supporting both income and expenses.

d. A schedule of any and all assets that Arlene possesses and controls (including trusts established and controlled by Arlene). This should include, but not be limited to:

   i. All stocks, bonds, mutual funds, REIT's, savings accounts, checking accounts, money market funds, checking accounts, and cash. At one time, many of these assets were in a Smith Barney account.

   ii. Any and all personal property that she owns together with liens against any of these assets.

   iii. Any and all real estate that she owns together with liens against these assets.

   iv. To the extent that documents exist, all supporting documents for the foregoing information set forth in the schedule of assets.

¶ 16 The Remainder Beneficiaries' position is inconsistent with the Trust's express terms, which vest Citigroup with "sole discretion" over encroachment on principal for the benefit of a lifetime beneficiary. The Trust reads:

> In the event during the term of the trust created herein for the benefit of either my

---

**3.** The record establishes that Eric Bistrow has received monthly account statements since 1997. Laurie Shapiro requested statements in 2007 and

has been receiving them since that time. The record reflects disagreement about whether Lyle Bistrow ever requested statements.

son ELVIN or my daughter ARLENE, there is a need to encroach upon either of said trusts, then *right to encroach upon the trust for the benefit of either of them shall be vested solely in the corporate trustees and be in their sole discretion.* (Emphasis added.)

■ ¶ 17 When a trustee exercises discretion granted by a trust, its determination is controlling unless the trustee "has abused the discretion conferred upon him." *In re Estate of Gardiner,* 5 Ariz.App. 239, 243, 425 P.2d 427, 431 (1967). Whether an abuse of discretion exists depends on the "extent of the power conferred." *Id.* In reviewing for an abuse of discretion, the question is not whether the court would have exercised discretion conferred by the Trust differently. *Cf. Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985) (in reviewing for an abuse of discretion, "[t]he question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason. We cannot substitute our discretion for that of the trial judge." (citation omitted)); *Quigley v. City Court,* 132 Ariz. 35, 37, 643 P.2d 738, 740 (App.1982) ("A difference in judicial opinion is not synonymous with 'abuse of discretion.' ").

¶ 18 Under the Trust, the Remainder Beneficiaries have no role in substantive decision-making about principal distributions to a lifetime beneficiary. Their only legally cognizable interest is in ensuring that Citigroup acts within the discretion conferred by the Trust. *Gardiner* makes clear that a broad grant of authority alters the "rules" that would otherwise apply to a trustee:

> The mere fact that the trustee does not follow the rules which would be applicable if no such power were conferred upon him does not constitute an abuse of discretion. Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules.

5 Ariz.App. at 242–43, 425 P.2d at 430–31 (rejecting remainder beneficiary's challenge and finding no abuse of trustee's broad discretion to "determine principal and income for all purposes").

■ ¶ 19 In *In re Trust Estate of Wills,* 8 Ariz.App. 591, 595, 448 P.2d 435, 439 (1968), a trustee refused to pay all of a lifetime beneficiary's medical expenses. The trust gave the trustee discretion to make payments to the lifetime beneficiary in the event of sickness or hospitalization, in amounts the trustee deemed proper. The trustee paid medical expenses only to the extent the beneficiary was unable to do so after using her own liquid assets. *Id.* In assessing whether the trustee had abused its discretion, *Wills* relied on certain principles from the Restatement (Second) of Trusts § 187 (1959). 8 Ariz.App. at 595, 448 P.2d at 439. Comment d to Restatement § 187 lists six factors pertinent to the determination:

> (1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.

Restatement § 187 cmt. d. Other courts have adopted these factors in determining whether a trustee has abused its discretionary powers. *See, e.g., In re Trusts A & B of Divine,* 672 N.W.2d 912, 919–20 (Minn.Ct.App.2004); *In re Estate of Manahan,* 255 Iowa 1060, 125 N.W.2d 135, 138 (Iowa 1963); *Cox v. Mid–Am. Dairymen, Inc.,* 965 F.2d 569, 572 (8th Cir.1992).

¶ 20 The Restatement's six-factor analysis has not been explicitly adopted by our appellate courts, though both *Gardiner* and *Wills* mention and apply some of its factors. *See Gardiner,* 5 Ariz.App. at 243–44, 425 P.2d at 431–32 (discussing the extent of power conferred on the trustee and the decedent's intended purpose of the trust); *Wills,* 8 Ariz. App. at 594–95, 448 P.2d at 438–39 (analyzing the testator's intent, the discretion granted to the trustee, and the external standards set by the trustee). Ordinarily, we might rely

on the Restatement (Third) of Trusts, which is the most recent iteration of trustee duties. A.R.S. Section 14–10106, however, directs us to consider the Restatement (Second) of Trusts. The statute reads, in pertinent part:

> The court shall look to the restatement (second) of trusts for interpretation of the common law *and not to subsequent restatements of trusts* to determine:
>
> 1. The rights and powers of creditors of beneficiaries.
> 2. The duties of trustees to distribute to those to whom a beneficiary owes any duties.
> 3. Whether public policy may affect enforceability and effectiveness of the terms of the trust.
> 4. And effectuate the settlor's intent.

A.R.S. § 14–10106(B) (emphasis added).

¶ 21 We adopt the Restatement (Second) of Trusts § 187 factors for determining whether a trustee has abused discretionary authority accorded by a trust. The superior court shall apply these factors to any future disputes that might arise over principal distributions to Sova.[4]

■ ¶ 22 The Remainder Beneficiaries' objections to the *in camera* review procedure are unpersuasive. An *in camera* review is appropriate for weighing competing interests and determining what disclosures, if any, are appropriate in a given case. *See, e.g., Mathews v. Pyle,* 75 Ariz. 76, 81, 251 P.2d 893, 896–97 (1952) (remanding records dispute and directing documents to be produced "for the private examination of the trial judge in order that the court may determine whether [the documents] are confidential and privileged or whether their disclosure would be detrimental to the best interests of the state."); *Fenton v. Howard,* 118 Ariz. 119, 122, 575 P.2d 318, 321 (1978) (*in camera* review is appropriate for balancing a litigant's need for information against the Conciliation Court's right to "function effectively"

by not disclosing non-privileged information); *Catrone v. Miles,* 215 Ariz. 446, 456–57, ¶¶ 31, 33, 160 P.3d 1204, 1214–15 (App.2007) (concluding the superior court "acted properly in considering and safeguarding confidentiality and privacy interests" by conducting an *in camera* review); *Schoeneweis v. Hamner,* 223 Ariz. 169, 175, ¶ 22, 221 P.3d 48, 54 (App.2009) (concluding the superior court's "failure to conduct an *in camera* review to balance the competing interests of privacy and access" was an abuse of discretion).

¶ 23 The superior court's order strikes an appropriate balance between Sova's interest in maintaining the privacy of her personal financial information and the Remainder Beneficiaries' interest in ensuring that Citigroup acts within the broad discretion conferred by the Trust. The order affords the Remainder Beneficiaries due process by offering review of Sova's financial information by a disinterested judicial body.[5] *Cf. Carlson v. Pima County,* 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984) (holding that custodian of public records could deny inspection based on "countervailing interests of confidentiality, privacy or the best interests of the state," subject to judicial review).

¶ 24 The out-of-state cases relied on by the Remainder Beneficiaries do not compel a different conclusion. Two deal with information that, in this case, was provided. *See In re Childress Trust,* 194 Mich.App. 319, 486 N.W.2d 141, 143 (1992) (remainder beneficiary entitled to copy of trust and list of assets); *McNeil v. McNeil,* 798 A.2d 503, 510 (Del. 2002) (trustee must disclose terms of trust, including fact that a person is a beneficiary). Another case addresses a self-interested transaction. *See In re Estate of Halas,* 209 Ill.App.3d 333, 154 Ill.Dec. 170, 568 N.E.2d 170, 173, 180–81 (1991). The last case is factually distinguishable and raises different issues. *See Emmert v. Old Nat'l Bank of Martinsburg,* 162 W.Va. 48, 246 S.E.2d 236, 238 (1978) (income beneficiary challenging

---

4. The legislature has decreed that A.R.S. § 14–10106 "applies to all judicial proceedings concerning trusts commenced on or after January 1, 2009," and that "[a]n act done before January 1, 2009[,] is not affected by this act." *See* 2008 Ariz. Sess. Laws, ch. 247, § 18.

5. The superior court did not order that Citigroup's Trust Advisory Committee's general policies and practices were immune from discovery. The *in camera* review applies only to Sova's personal financial information.

trustee's refusal to make principal distributions where there is no indication trustee had sole discretion).[6]

## III. Rule 26(b)(1)

 ¶ 25 The Remainder Beneficiaries contend the superior court violated Arizona Rule of Civil Procedure ("Rule") 26(b)(1) by not requiring Citigroup to turn over Sova's financial information. However, there are no discovery requests in the record that might trigger application of Rule 26(b)(1). Moreover, the Remainder Beneficiaries did not assert this argument below and have thus waived it for purposes of appeal. *See Cullum v. Cullum*, 215 Ariz. 352, 355 n. 5, ¶ 14, 160 P.3d 231, 234 (App.2007) ("As a general rule, a party cannot argue on appeal legal issues not raised below."); *see also Alano Club 12, Inc. v. Hibbs*, 150 Ariz. 428, 431, 724 P.2d 47, 50 (App.1986).

## IV. Attorneys' Fees

¶ 26 Citigroup requests an award of attorneys' fees pursuant to A.R.S. § 14–11004, which reads:

> A. A trustee ... is entitled to reimbursement from the trust for that person's reasonable fees, expenses and disbursement, including attorney fees and costs, that arise out of and that relate to the good faith defense or prosecution of a judicial ... proceeding involving the administration of the trust, regardless of whether the defense or prosecution is successful.
>
> B. A court ... may order that a party's reasonable fees, expenses and disbursements pursuant to subsection A be paid by any other party or the trust that is the subject of the judicial proceeding.

¶ 27 Citigroup's good faith in this dispute is apparent. We award Citigroup its attorneys' fees and costs incurred on appeal, to be paid from the Trust.

---

**6.** Moreover, *Emmert* recognizes that, "[a]ny time a corpus invasion privilege is granted there exists the possibility ... that remainder interests will be reduced or eliminated. Such a possibility is

## CONCLUSION

¶ 28 We affirm the judgment of the superior court, as modified herein to require a Restatement-based assessment of the trustee's actions in any future disputes over principal distributions.

CONCURRING: MAURICE PORTLEY, Presiding Judge and PATRICIA A. OROZCO, Judge.

---

inherent in the nature of corpus invasion privileges and cannot be used to defeat a lawful and proper invasion of corpus." 246 S.E.2d at 242.